(33 Misc. Rep. 209.)

PEOPLE v. KRAMER.

(Court of General Sessions, New York County. November, 1900.)

1. ELECTIONS—CRIMES — PROSECUTION —ATTORNEY GENERAL — RIGHTS—GRAND JURY.

The statutes prescribing the powers and duties of district attorneys neither expressly nor impliedly deprive the attorney general of any of his former powers under the common law, though authorizing district attorneys to exercise and perform the same duties, and requiring them to assist the attorney general when the latter is called on to prosecute. Prior to the constitution of 1895 the attorney general, by the executive law (Laws 1892, c. 683, § 51 et seq.), was authorized to appoint deputies, who, with himself, when called on by the governor, were required to prosecute criminal actions or proceedings which the district attorney was authorized or required to prosecute. In 1895 the same act was amended so to limit the powers and duties of the district attorney in such cases

to such as were required of him by the attorney general or his deputies. Const. 1895, art. 5, §§ 1, 6, provide for the election of an attorney general, and, following the constitution of 1846, declare that his powers shall be such as now are or hereafter may be prescribed by law. *Held*, in view of the foregoing, that Laws 1899, c. 302, and Laws 1900, c. 737, amending the executive law, and requiring the attorney general or his deputy to represent the people, when so directed by the governor, in the prosecution of crimes against the elective franchise, before all magistrates, in all courts, and before any grand jury, were valid, and not a violation of Const. 1895, art. 10, § 1, which provides for the election of district attorneys, but leaves their powers to be prescribed by· statute.

2. SAME.

That the offense was committed prior to the enactment of the act of 1900 is not an objection to the attorney general or his deputy prosecuting the same pursuant thereto, since the prosecutor is for the people to select, and defendant is not concerned therewith.

Charles Kramer was indicted for a crime against the elective franchise, and he moves to set aside the indictment. Motion denied.

Abraham Levy, for the motion.

John C. Davies, Atty. Gen., and John C. Hammond, Dep. Atty. Gen., for the People.

GOFF, R. On the 23d day of October, 1900, the grand jury indicted the defendant for a crime, of the grade of felony, against the elective franchise, alleged to have been committed on the 9th day of October, 1896. On arraignment he moved to set aside the indictment on the ground, as alleged in his affidavit, that the deputy attorney general was permitted to be present in the grand-jury room during the session of the grand jury, while the charge embraced in the indictment was under consideration, in violation of subdivision 2 of section 313 of the Criminal Code. Job E. Hedges makes affidavit that he is a deputy attorney general, duly appointed and sworn, and assigned by the attorney general as counsel to the state superintendent of elections for the prosecution of crimes against the elective franchise within the Metropolitan elections district, and that he appeared before the grand jury, pursuant to law, for the purpose of giving to the grand jury information relative to the indictment against the defendant. ·The fact of the deputy attorney general's presence before the grand jury is conceded, and the question of law arises, had he a legal right to be there? The deputy attorney general asserts that he had, under the provisions of the executive law, while the counsel for the defendant contends—First, that the Criminal Code gives to the district attorney, exclusive of the attorney general, the right to appear before the grand jury; that the executive law, in so far as it confers this right upon a deputy attorney general, "an appointive officer," is an invasion of the constitutional rights of "an elective officer," the district attorney, and is therefore unconstitutional and void; and, second, that, even if the law assailed be constitutional, its effect is only prospective from the·date of its enactment in 1900, and that it cannot relate back to the offense charged in this indictment to have been committed in 1896.

Section 313 of the Criminal Code provides that the indictment must

be set aside "when a person has been permitted to be present during the session of the grand jury, while the charge embraced in the indictment was under consideration, except as provided in sections two hundred and sixty-two, two hundred and sixty-three and two hundred and sixty-four." It is provided by section 262 that the grand jury may ask the advice of any judge of the court or of the district attorney of the county; and by section 263, that, whenever required by the grand jury, it shall be the duty of the district attorney of the county to attend them for the purpose of examining witnesses or of giving them advice upon any legal matter; and by section 264, that the district attorney of the county must be allowed at all times to appear before the grand jury for the purpose of giving information relative to any matter before them. These three sections, taken together, define the duties and right of the district attorney in his relation to the grand jury, and, when considered in connection with section 313, may be fairly held to intend that the performance of those duties and the exercise of that right are limited to that official, unless it be otherwise ordained by law. By chapter 302 of the Laws of 1899 the executive law was amended, and by section 57 it was made the duty of the attorney general to enforce the law relative to crimes against the elective franchise, and that the attorney general may, when directed by the governor, assign one of his deputies as counsel to the state superintendent of elections, who shall take charge of prosecutions within the Metropolitan elections district. By chapter 737 of the Laws of 1900 this act was amended to read that, in any county within the Metropolitan elections district, the attorney general may, whenever he deems it advisable, and shall if so directed by the governor, assign one of his deputies to act as counsel for the state superintendent of elections, and to take charge of prosecutions of crimes against the elective franchise arising in such county; that such deputy shall represent the people of this state in all such prosecutions, when directed by the attorney general or requested by the state superintendent of elections to appear therein, before all magistrates and in all courts, and before any grand jury having cognizance thereof.

The learned counsel for the defendant says in his brief that, "if this statute is a valid exercise of the legislative power, it undoubtedly authorizes the course of action adopted in this case. But," he contends, "it seems clear that it violates section 1 of article 10 of the constitution of this state," and several authorities in this state are cited by him in support of his contention. I appreciate fully the importance of the question, and also the generally expressed disinclination of courts of the first instance to pass upon the constitutionality of laws; but the nature of the motion, the number of prisoners in the city prison held under indictments similar to the one under consideration, and awaiting its disposition, and the necessities for an immediate decision, of which I must take judicial cognizance, preclude the avoidance of meeting the issue; and, therefore, even with the brief time at my disposal, I will examine the question.

The first time that the district attorney was mentioned in the constitution was in 1846, when it provided that he, with other county

68 N.Y.S.—25

officers, should be chosen by the electors of the respective counties. That provision is re-enacted in section 1 of article 10 of the constitution of 1894. The constitution simply provides for his election, and does not define his duties or his powers. These have been the subjects of legislative enactments. The legislature has given to the district attorney the power to appear before the grand jury, and it has also given to the attorney general the same right. ·If it was a valid exercise of legislative power when established in reference to the district attorney, was it invalid when established in reference to the attorney general? It is pertinent to inquire into the origin of the office of the district attorney, and see what his rights and duties were at the time of the adoption of the constitution in 1846; and also into the origin of the attorney general, and his rights and duties. It is unnecessary, with regard to the attorney general, to go back further than the organization of the state government in 1777. The office was then in existence as the attorney general of the colony, and was clothed with certain rights and powers derived from the common law. In People v. Miner, 2 Lans. 397, the court, by Mullen, J., said:

"The attorney general had the power. and it was his duty, among other things, to prosecute all actions' necessary for the protection and defense of the property and revenues of the crown, and, by information, to bring certain classes of persons accused of crimes and misdemeanors to trial."

The common law of England was the law of our colonial government. The attorney general, under the colonial government, received his appointment from the governor of the colony, and exercised his duties under the common law. Later on he was commissioned by the crown. The attorney general, at common law, was the chief legal representative of the sovereign in the courts, and it was his duty to appear for and prosecute in behalf of the crown any matters,—criminal as well as civil. It was said by Blackstone (3 Bl. Comm. 27):

"He represents the sovereign, in whose name all criminal process issue, and his power to prosecute all criminal offenses is unquestioned at common law."

In People v. Miner, supra, it was said:

"As the powers of the attorney general were not conferred by statute, a grant by statute of the same or other powers would not operate to deprive him of those belonging to the office at common law, unless the statute, either expressly or by reasonable intendment, forbade the exercise of powers not thus expressly conferred. He must be held, therefore, to have all the powers belonging to the office at common law, and such additional powers as the legislature has seen fit to confer upon him."

This was cited with approval in People v. Tweed, 13 Abb. Prac. (N. S.) 25.

The office of attorney general, though an existing office, was not mentioned in the constitution of 1777, but his appointment as an existing officer was provided for by the council of appointment. Thus we find that on the 20th of April, 1777, when the first state constitution was adopted, the attorney general became the representative of the people of the state, and was the only officer who, by virtue of his common-law powers, could represent the people, and in their name conduct prosecutions for crime. Chapter 8 of the Laws of 1796 provided for the appointment of assistant attorneys general to take

charge of certain districts outside of New York City, with respect to prosecutions at the courts of oyer and terminer and general sessions of the peace, and declared that:

"It is no longer the duty of the attorney general to so attend in person unless required to do so by the governor or by a judge of the supreme court, in which case the assistant attorney-general shall assist the attorney-general when required to do so."

And it was further provided that:

"It shall be the duty of the attorney-general to attend the court of general sessions of the peace in the city and county of New York, and there to do and perform the like services as are hereby required of the assistant attornies-general at the general sessions of the peace in the several counties of this state." 3 Laws 1789–96 (inclusive) p. 645.

The assistant attorney general appointed by this statute may be taken as the prototype of the district attorney; and it will be observed that the attorney general was relieved of the duty to attend in person, and not deprived of the power to do so, but when he did so attend, at the instance of the governor or judge of the supreme court, the assistant attorney general of the district became his assistant, when so required. The first time that the office of district attorney was created was by chapter 146 of the Laws of 1801, which provided for the appointment by the governor of district attorneys for the several districts of the state, to attend to all courts of oyer and terminer and general sessions of the peace, except in New York county, in which the attorney general must act; and it was further provided that:

"It shall be lawful for the person administering the government of this state, or any judge of the supreme court by writing under his hand to require the attorney-general to attend the court of oyer and terminer to be held in any county, and it shall be the duty of the attorney-general to attend, accordingly, and thereupon to conduct at such court all public prosecutions; and the district attorney for such district, shall in such matters as appertain to his office, and shall be required of him by the attorney-general aid in conducting the same."

Chapter 66 of the Laws of 1813 made it the duty of the district attorney to attend the courts of oyer and terminer and jail delivery in New York county, and to manage and conduct all suits and prosecutions therein in the same manner as in other counties, and that "it shall not be necessary for the attorney-general to attend such courts except when required so to do by the governor or one of the judges of the supreme court." This act simply declared it unnecessary for the attorney general to attend the courts in New York county, unless directed, etc. But in no way, either by express terms or reasonable implication, was he precluded from attending if he so wished; nor was the relation of the district attorney to him as an assistant in any way altered. Chapter 5, tit. 4, art. 2, § 15 (1st Ed.) 1 Rev. St. 1829, enacts:

"District attorneys are appointed by the judges of the county courts of the respective counties. No person shall be appointed a district attorney, unless he be at the time a counselor-at-law of the supreme court; and if there be no such counselor residing in the county, or none willing to accept the office, an attorney-at-law may be appointed."

Chapter 8, tit. 5 (1st Ed.) 1 Rev. St., enacted, by section 1, that:

"It shall be the duty of the attorney-general to prosecute and defend all actions, in the event of which, the people of this state shall be interested."

"Sec. 5. Whenever required so to do, by the governor, or by one of the justices of the supreme court, the attorney-general shall attend the courts of oyer and terminer and jail delivery, for the purpose of managing and conducting the suits and prosecutions of the people of this state."

The constitution of 1821, art. 4, § 6, again recognized the office of the attorney general, and provided for his appointment by the senate and assembly. The constitution of 1846, art. 5, § 1, provides for the election of the attorney general by the electors of the state. By section 6, the same article, it is declared that "the powers and duties of the attorney-general shall be such as now are or hereafter may be prescribed by law." This same constitution, as before observed, provided for the election of district attorney, and, while it was silent as to his powers and duties, it was positive in its declaration regarding the powers and duties of the attorney general. They were preserved as they then existed, and provision was made for such additional powers and duties as might thereafter be prescribed by law. Can it be legally maintained that, in view of this constitutional provision, the preceding legislation, and his common-law powers, which had never been abrogated, the attorney general had not the power, nor was it his duty, to conduct criminal prosecutions in the name of the people in any county of the state, at the instance of the governor or a justice of the supreme court, and, in such event, that the district attorney of the county was not bound to assist him? I think not. Executive Law (Laws 1892, c. 683) art. 5, under the title of "Attorney-General" (section 51), says:

"The attorney-general may appoint two deputies, to be designated first and second. * * * The attorney-general may appoint such other deputies as he may deem necessary."

"Sec. 52. General Duties. The attorney-general shall: (1) Prosecute and defend all actions and proceedings in which the state is interested; (2) whenever required by the governor or by a justice of the supreme court, attend the courts of oyer and terminer for the purpose of managing and conducting a criminal action or proceeding therein; (3) upon the request of the governor or other state officer prosecute every person charged by either of them with the commission of an indictable offense in violation * * * with matters connected with his department."

"Sec. 55. The governor or attorney-general may employ such additional counsel * * * to assist the attorney-general in the prosecution of actions in which the state is interested."

The executive law, amended by chapter 68 of the Laws of 1894 (subdivision 2 of section 52), was amended to read:

"The attorney-general shall, whenever required by the governor, attend in person, or by one of his deputies a court of oyer and terminer or appear before the grand jury thereof for the purpose of managing and conducting in such court or before such jury such criminal actions or proceedings as shall be specified in such requirement; in which case the attorney-general or his deputy so attending shall exercise all the powers and perform all the duties in respect to such actions or proceedings, which, by sections two hundred and sixty-two, two hundred and sixty-three, two hundred and sixty-four, two hundred and sixty-six, three hundred, three hundred and nine, six hundred and nine and six hundred and ten of the Code of Criminal Procedure, the district attorney is authorized or required to exercise or perform; and in respect to such actions

or proceedings the district attorney shall not exercise said powers or perform said duties, except upon the request of the attorney-general or the deputy attorney-general so attending."

This executive law, so amended, was in force on January 1, 1895, when the constitution adopted in 1894 took effect. That constitution provides (article 5, § 1) for the election of the attorney general, and (section 6) that his powers shall be such as now are or hereafter may be prescribed by law. The constitution of 1894 preserves to the attorney general all of the statutory powers then existing, as well as those preserved to him by the constitution of 1846, and provides for such powers as may thereafter be prescribed by law. It is, therefore, plain that on the 1st of January, 1895, when the present constitution took effect, whenever required by the governor the attorney general or his deputy had the right, under sections 262, 263, and 264 of the Criminal Code, to appear before and advise the grand jury in a criminal action or proceeding, and in respect to such criminal action or proceeding the district attorney was deprived of the right to exercise his powers or duties conferred upon him by the said sections of the Code. In 1895 section 52 was amended to read:

"In which case the attorney-general or his deputy so attending shall exercise all the powers and perform all the duties in respect to such actions or proceedings which the district attorney would otherwise be authorized or required to exercise or perform; and in any of such actions or proceedings the district attorney shall only exercise such powers and perform such duties as are required of him by the attorney-general or the deputy attorney-general so attending."

Then follow the amendments to the executive law of 1899 (chapter 302) and 1900 (chapter 737), which provided that the attorney general or his deputy shall represent the people of this state in all such prosecutions (violations of the elective franchise) before all magistrates and in all courts, and before any grand jury.

The counsel for the defendant has cited several authorities, from which he argues, by parity of reasoning, that the statute quoted, giving the attorney general or his deputy the right to appear before the grand jury, is unconstitutional. I have examined these cases, and I am of opinion that they do not apply to the case at bar. In Warner v. People, 2 Denio, 272, the question was on quo warranto between the county clerk and the clerk of the court of common pleas; and it was decided that, inasmuch as the election of the county clerk was provided for by the constitution, and at the time of its adoption, in 1821, he was also clerk of the court of common pleas, and that most of the emoluments of his office arose from that source, an act of the legislature providing for the appointment of a clerk of the court of common pleas, which would not only deprive the clerk of his duties, but also of his emoluments, was unconstitutional. In People v. Keeler, 29 Hun, 175, the question was as to the constitutionality of an act which took from the sheriff the custody of the jail and of the prisoners confined therein; and it was decided that the custody of the jail and of the prisoners confined therein was one of those duties which by common law belonged to the sheriff, which continued to belong to him down to the adoption of the constitution, and that

it must have been intended by that instrument to continue him in possession of those powers, and that an act providing that he should be deprived of them was unconstitutional. In People v. Albertson, 55 N. Y. 50, the question was as to the power of the legislature to create a subdivision of the state, which was not recognized by the constitution as a civil or political division, into a police district. The case of People v. Draper, 15 N. Y. 532, decided the constitutionality of the act creating a Metropolitan police district. I am unable to perceive how any of these cases affects the question under consideration. The district attorney had no common-law powers, like the sheriff; nor have the emoluments of his office been interfered with, as in the case of the county clerk. His office is derived from that of the attorney general, and at its inception he was designated as his assistant. By a succession of constitutional provisions and legislative enactments, the right of the attorney general to prosecute and conduct criminal actions, and to require the assistance of the district attorney in such cases, is declared and recognized. No one of his powers or duties has been abrogated by statute. The district attorney, by statute and by a long-continued practice, has succeeded to some of the powers of the attorney general within the respective counties, but he has not supplanted him. In People v. McLeod, 1 Hill, 377, it was said:

"At common law the attorney general alone possessed this power, to enter a nolle prosequi, and might, under such precautions as he felt it his duty to adopt, discontinue a criminal prosecution in that form at any time before verdict. * * * It probably exists unimpaired in the attorney general to this day, and it has been by several statutes delegated to district attorneys, who now represent the attorney general in nearly everything pertaining to indictments and other criminal proceedings local to their respective counties."

The law in question does not deprive the district attorney of any of his powers, except in those specified cases which the attorney general conducts. There is nothing in the law which prevents the district attorney from indicting and prosecuting to conviction every person who, within this county, violates the election laws. Indeed, the policy of the law designs a co-operation, and not a conflict, between the attorney general and the district attorney. The district attorney is required to assist and co-operate with the attorney general. By section 4 of article 4 of the constitution it is enjoined upon the governor of the state to see that the laws are faithfully executed; and the act of 1900, supra, provides that whenever the governor shall advise the attorney general that he has reason to doubt whether, in any county, the law relating to crimes against the elective franchise is properly enforced, he may direct the attorney general to prosecute, etc. The law thus confers upon the governor a discretion, and, when he has reason to doubt that the laws are being executed, I know of no judicial method by which his reason may be questioned or measured. It is sufficient if he, in the exercise of the discretion vested in him, directs the attorney general to appear and prosecute any actions, civil or criminal, in which the people are interested. Can there be conceived of anything in which the people of the state are more interested than the protection and purity of the elective

franchise?  A fraud upon the elective franchise in any part of the state is a fraud upon the whole people of the state, and when the legislature provides that the attorney general, in the name of the people of the state, may prosecute for such frauds, they are, in my opinion, clearly within their constitutional right.

The counsel for the defendant contends that the appearance of a deputy attorney general, who is "an appointive officer," before the grand jury, to the exclusion of the district attorney, "an elective officer," under the constitution, is illegal.  There is no value in this contention.  Under the sections of the Criminal Code referred to, only the district attorney is mentioned as having the right to appear before the grand jury.  His assistant is not mentioned, and, if the argument as to the deputy attorney general were to hold good, it would follow that an assistant district attorney, who is also an appointive officer, has no legal right to appear before the grand jury. It is a matter of common knowledge that, in the great majority of indictments found in this county, it is an assistant district attorney who appears.  The appointment of an assistant district attorney is provided for by law, and he is clothed with the powers and duties of the district attorney when acting in his place and stead.  It is also provided by law that the attorney general may appoint deputies who, when acting in his place and stead, may exercise the same powers and perform the same duties as he himself may in the particular matters delegated.

The second point of the learned counsel for the defendant contends that the attorney general, even though he is authorized by law to appear before the grand jury in 1900, is not authorized by law to appear in the prosecution of an offense alleged to have been committed in 1896.  The law relating to the corpus of the crime charged against the defendant has not been changed in any way since 1896.  It is the same now as it was then.  The punishment or penalty has not been altered or increased.  Hartung v. People, 26 N. Y. 167.  The procedure or rules of evidence have not been abridged or extended. Stokes v. People, 53 N. Y. 164.  So far as the defendant is concerned, it is not for him to select his prosecutor.  If he has committed a crime against the people of the state, it is for the people of the state to say by whom they shall be represented on his trial.

From the history of the office of the attorney general, his functions and powers at common law, which have been recognized and amplified by constitutional provisions and legislative enactments, I am of opinion that the executive law, as amended by the act of 1900, empowering the attorney general or his deputy to represent the people of this state in the prosecution of crimes against the elective franchise before all magistrates and in all courts, and before any grand jury, is a valid exercise of the legislative power.  The motion to set aside the indictment is therefore denied.

Motion denied.