## COUNTY COURY—KING'S COUNTY,
### Nov. 1910.

# THE PEOPLE v. WILLIAM BRENNAN.

(69 Misc. 548.)

PRIMARY ELECTION LAW—INDICTMENT—ATTORNEY GENERAL MAY ACT WITHOUT BEING DESIGNATED BY GOVERNOR.

The Attorney-General has ample power to act for the people under the Primary Election Law, to present matters to the grand jury himself or by a deputy without any designation by the Governor and to try cases wherein persons are accused of violations of said law; and his presence or that of his deputy before the grand jury will not invalidate an indictment for such offense.

MOTION to dismiss an indictment.

*Edward R. O'Malley, Attorney-General (G. M. Moscowitz, Deputy Attorney-General, of counsel),* for plaintiff.

*Eugene Conran,* for defendant.

DIKE, J.:

This is a motion to dismiss the indictment against this defendant, on the ground that a person other than those named in sections 262, 263 and 264 of the Code of Criminal Procedure was permitted to be present during the session of the grand jury, namely, a Special Deputy Attorney-General who presented the case to the grand jury.

An examination of the history of the powers and duties of the Attorney-General seems to disclose that the Attorney-General still retains his common law powers, with such added powers as have been granted by the State Constitution and

the statutes; but the district attorney, by statute and long continued practice, has succeeded to some of the powers of the Attorney-General, but has not necessarily supplanted him.

The opinion of Mr. Justice Goff, in the case of People v. Kramer, 33 Misc. Rep. 209, gives an interesting history of the powers and duties of the Attorney-General under the common law. It would seem, from the authorities, that, under the common law, the Attorney-General possessed the power and it was his duty to appear in any matter, civil or criminal, in which the State was interested; and that he could and did thus attend the sittings of any grand jury and present charges against any persons accused of the commission of a crime, and could later try those cases before the proper tribunal.

At the time of the adoption of the first New York State Constitution in 1777, the above powers and many others were possessed by the Attorney-General. Chapter 66 of the Laws of 1813 provides that the district attorney shall attend the sittings of the Courts of Oyer and Terminer and prosecute therein, and " it shall not be necessary for the Attorney-General to attend such courts, except when required so to do by the Governor or one of the judges of the Supreme Court." Chapter 8, title 5, Revised Statutes, section 1, provides that " it shall be the duty of the Attorney-General to prosecute and defend all actions in the event of which the people of this State shall be interested." It would appear that, between 1777 and the adoption of the Constitution in 1846, the Attorney-General was relieved but was not in terms deprived of the power to prosecute any action in this State wherein the people had an interest. The Constitution of 1846 set forth as follows: " The powers and duties of the Attorney-General shall be such as are now or may be hereafter prescribed by law." Since 1846 the powers of the Attorney-General and the district attorney have been amplified by various statutes (Laws of 1892, chap. 683; Laws of

1894, § 2, subd. 2; Laws of 1899, chap. 302; Laws of 1900, chap. 737, and Laws of 1900, chap. 23, art. 6), from all of which it might be argued that the Attorney-General shall perform certain duties at the request of the Governor; and, therefore, such statutes, by exclusion and implication, prevent him from performing these duties without designation by the Governor. In the case of the People v. Miner, 2 Lans. 397, it was held that, " As the powers of the Attorney-General were not conferred by statute, a grant by statute of the same or other powers would not operate to deprive him of those belonging to the office at common law, unless the statute, either expressly or by reasonable intendment, forbade the exercise of powers not thus expressly conferred."

Mr. Justice Goff, in the Kramer case, *supra,* speaking of chapter 66 of the Laws of 1813, as to the powers of the Attorney-General, said that this act in no way, " either by express terms or reasonable implication, precluded him from attending the courts in New York county, if he so wished, nor was the relation of the district attorney to him as an assistant in any way altered. In practice in some cases, and particularly cases of the kind under discussion, there is co-operation of action between the Attorney-General and the district attorney.

In view of the decision of the Kramer case, it would seem clear that the Attorney-General had ample power to act for the people under the Primary Election Law, to present matters to the grand jury himself or by Deputy Attorney-General without any designation by the Governor, and to try cases wherein persons are accused of violations of the said law.

I therefore overrule the demurrer interposed in this case.