THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* CHARLES S. DORSEY, Defendant.

County Court Queens County, August 4, 1941.

*John J. Bennett, Jr., Attorney-General,* and *John Harlan Amen* and *John M. Murtagh, Assistant Attorneys-General,* for the plaintiff.

*Mordecai Konowitz,* for the defendant.

COLDEN, J. Motion by the defendant for leave to inspect the minutes of the grand jury which indicted the defendant for the crime of perjury in the first degree. In his moving papers the defendant offers numerous grounds upon which his motion · is predicated; among them he surmises that the basis of the authority upon which the Attorney-General " presumed to conduct the investigation * * * is the Executive Proclamation whereby the Attorney-General is directed to conduct an investigation in Kings county. That surmise is based upon the statement in the indictment that Assistant Attorney-General is in charge of the investigation in Kings County," and " that an inspection will show that an Assistant Attorney-General attended the sessions of the Grand Jury without authority, and that the District Attorney and his assistants were excluded therefrom, which fact, if found, will be the basis of my motion to set aside the indictment under Section 313 of the Code of Criminal Procedure." The Assistant Attorney-General's position is that this prosecution is conducted under the provisions of section 347 of the General Business Law which together with his assumed general statutory constitutional and common-law powers give the Attorney-General adequate authority. He denies any assertion of powers under the Governor's Kings county orders in so far as matters in Queens county are concerned. The Assistant Attorney-General concedes that at all sessions of the grand jury which considered these charges against the defendant, the Assistant Attorney-General was in attendance upon the grand jury and presented the evidence 'to the grand jury upon which this indictment was found. He concedes also that neither the district attorney of Queens county nor any assistant district attorney of Queens county was present at any of such sessions.

This motion is one of a series of applications which have come before this court in relation to what is locally known as the " Amen Investigation." Under dates of October 20, 1938, and January 6, 1939, the Hon. Herbert H. Lehman, Governor of the State of New York, pursuant to the provisions of section 62 of the Executive Law, issued orders to the Hon. John J. Bennett, Jr., Attorney-

General of the State of New York, to attend in person or by his assistants and deputies before Extraordinary Special and Trial Terms of the Supreme Court for the county of Kings, and before the grand juries drawn for such terms, to investigate and prosecute charges relative to the administration and enforcement of law in Kings county. The Attorney-General appointed the Hon. John Harlan Amen an Assistant Attorney-General and authorized and directed him and his staff to take charge of the investigation in Kings county. Such investigation has been and is in progress. During such investigation evidence was disclosed which indicated violations of article 22 of the General Business Law by contractors in obtaining paving contracts with the city of New York and that such violations occurred in both Kings county and in Queens county. Thereafter, on July 1, 1940, Attorney-General Bennett issued an order to Assistant Attorney-General Amen specifically confirming to him all of the powers of an Assistant Attorney-General of the State of New York, and in such order authorized and directed Assistant Attorney-General Amen and his staff to investigate and prosecute all violations of sections 340 and 341 of the General Business Law in the county of Queens in connection with the construction of public highways and sewers. Thereafter Assistant Attorney-General Amen, Assistant Attorneys-General Murtagh and Chambers attended before the September term grand jury of this court (which term has been continued) and presented evidence which has resulted in numerous indictments and convictions for violations of sections 340 and 341 of the General Business Law. Such investigation is still in progress. The indictment now under consideration was returned by the same grand jury.

This indictment against the defendant Dorsey does not charge him with any violation of the General Business Law, nor does it even inferentially suggest that the perjury complained of was incidental to, or in any manner connected with any act, practice or transaction in perpetration of a violation of such law.

The indictment is signed " John J. Bennett, Jr., Attorney-General, John Harlan Amen, Assistant Attorney-General, In Charge of Kings County Investigation." The words, " In Charge of Kings County Investigation," surely have no place in the indictment, but they may be disregarded as surplusage. So far as the formal validity of the indictment is concerned, the signature of the Attorney-General is adequate.

In view of the frequency with which the authority of the Attorney-General is questioned in this investigation in Queens county, the extent of that authority should be determined. That he has no authority to act in Queens county under the Governor's

orders of October 20, 1938, and January 6, 1939, under section 62
of the Executive Law is established by *Matter of Turecamo Contracting Co., Inc.* (260 App. Div. 253) and *Matter of Cranford Material Corp.* (174 Misc. 154), both of which cases hold that the Attorney-General's authority is limited by and to the scope of the orders.
The question remains as to whether the Attorney-General has
power under the statutes, the Constitution or his alleged common-law powers to appear before the September term grand jury of this
court, and present evidence to that body which resulted in the
present indictment against the defendant Dorsey for perjury, or
whether his appearance was such as to necessitate the dismissal
of the indictment in view of the provision of section 313 of the
Code of Criminal Procedure which says, " The indictment must
be set aside by the court in which the defendant is arraigned,
and upon his motion, in either of the following cases, but in no
other: 1.  *  *  *.  2. When a person has been permitted to be
present during the session of the grand jury, while the charge
embraced in the indictment was under consideration, except as
provided in sections two hundred and sixty-two, two hundred and
sixty-three and two hundred and sixty-four."  These exception
sections authorize the appearance of the district attorneys and
their assistants in all cases, and of the Attorney-General and his
assistants in cases involving violations of the elective franchise,
that is, the provisions of article 74 of the Penal Law.

As to the rights, powers and authority of the Attorney-General,
the decisions are in conflict.  One class of cases holds in substance
that the Attorney-General of the State is possessed of powers of
criminal prosecution that are in all cases coincidental, concurrent,
and in some instances superior to those of the county district
attorneys.  Such cases hold that, prior to the American Revolution,
the Attorney-General was the officer through whom the British
King enforced his laws upon the colonists; that the power and
authority of such colonial Attorney-General included the right to
attend the sessions of any grand jury and to assist in the present-ment of any criminal charges.  With the establishment of the State
government, following the Declaration of Independence, the office
of Attorney-General was included as part of the State government.
In *People* v. *Tru-Sport Publishing Co., Inc.* (160 Misc. 628) the
court said with reference to present powers of the Attorney-General
in relation to powers formerly exercised by the King's colonial
Attorney-General, " All those powers and prerogatives were retained
by that office upon its inauguration into the organization of our
State government, and there they still exist along with the powers
since granted to it, except only as they have been expressly abrogated

by statutory enactment or by reasonable intendment so to do necessarily implied from such enactment. As regards the power of the Attorney-General as the general public prosecutor and defender in all legal matters that concern the sovereign, he is still supreme in so far as any legislative enactments have expressly taken away or limited that power." The court cites with approval *People* v. *Kramer* (33 Misc. 209) which analyzes and traces the historical development of the office of Attorney-General and seeks thereby to demonstrate that the Attorney-General. of the State possesses the same common-law powers which were held by the Attorney-General who was the servant of the King in colonial days. The case stresses the fact that section 6 of article V of the Constitution of 1846, which was the first to provide for the election of the Attorney-General by the people, referring to the authority of the Attorney-General, declared that " the powers and duties of the Attorney-General shall be such as now are or here-after may be provided by law." The Constitution of 1894, which was in effect when *People* v. *Kramer* (*supra*) was decided, con-tained a similar provision. The court held that by virtue thereof the Attorney-General continues to possess the ancient common-law powers and has the power and right at any time, in any county, to appear before any grand jury and any court, to prosecute any criminal cause, as did the King's colonial Attorney-General in New York Colony in pre-Revolutionary days. The manner in which the laws were enforced in the colony is rather well defined in the Declaration of Independence, and a reading of that document leaves one unimpressed with the desirability of a perpetuation of that system of law administration. Conversely, it was held that, inasmuch as the office of county district attorney did not exist under the King, but is the result of post-Revolutionary legislation and constitutional provisions, the county district attorney's powers are limited to those conferred by such statutory and constitutional declarations. The case of *People* v. *Kramer* (*supra*) involved violations of the elective franchise and the power of the Attorney-General to prosecute could have been sustained under statutory provisions. The court, however, chose to interpret the then existing constitutional provision (State Const. of 1894, art. V, § 6) that the powers of the Attorney-General " shall be such as are now or hereafter may be prescribed by law " as including the common-law powers of the Attorney-General. Such determination is contrary to the interpretation given by our Court of Appeals in the case of *Brinckerhoff* v. *Bostwick* (99 N. Y. 185) wherein that court held that " such expressions as ' required by law,' ' regu-lated by law,' ' allowed by law,' ' made by law,' ' limited by law,'

' as prescribed by law,' ' a law of the State,' are of frequent occurrence in the Codes and other legislative enactments; and they are always used as referring to statutory provisions only."

The most recent decisions of our courts clearly hold that the assertion that the Attorney-General has the wide scope of power and authority indicated in *People* v. *Kramer* (*supra*) and in *People* v. *Tru-Sport Publishing Co., Inc.* (*supra*) cannot be sustained. As was said by Judge MacCrate in *Matter of Cranford Material Corp.* (174 Misc. 154): " Therefore, while the claim of power in the Attorney-General to assume at will the prosecution of all crime in a county cannot be sustained, after consideration of the constitutional and statutory provisions herein mentioned, there is power to carry on within the limits prescribed by the executive orders."

But there is a limitation upon the power which the Attorney-General may exercise even though he be acting under an order issued by the Governor of the State under section 62 of the Executive Law. In the case of *Ward Baking Co.* v. *Western Union Telegraph Co.* (205 App. Div. 723) the court considered the power of the Attorney-General to enter a county to investigate a charge of murder, under an order of the Governor under subdivision 8 of section 62 of the Executive Law. The local district attorney had not been superseded nor was there any suggestion that the local district attorney was not diligently discharging the duties of his office. The court said: " It cannot be supposed that it was intended to invest the Attorney-General with the power and duty to conduct an investigation, wherever and whenever in any county of the State a crime had, in peace times, been committed by an individual. It cannot be supposed that the Legislature intended to sanction investigations which would so completely revolutionize our criminal procedure and transfer to the Attorney-General of the State powers now resident in the district attorneys of the counties and in the local magistrates." Certain it is that the decision in *Ward Baking Co.* v. *Western Union Telegraph Co.* (*supra*) determines that the Attorney-General must act within the powers conferred upon him by the Constitution and by legislative enactment and while this decision deals with the provisions of subdivision 8 of section 62 of the Executive Law, it clearly dissipates the theory of common-law powers enunciated in such cases as *People* v. *Kramer* (*supra*) and *People* v. *Tru-Sport Publishing Co., Inc.* (*supra*).

The powers of the Attorney-General under subdivision 2 of section 62 of the Executive Law were recently considered by the Appellate Division in *Matter of Turecamo Contracting Co.* (*supra*).

The Governor of the State by executive orders under the authority of said subdivision 2 of section 62 of the Executive Law, directed the Attorney-General to conduct an investigation into alleged misconduct in the enforcement of law in the county of Kings, to which orders reference has already been made. While the investigation was in progress a new district attorney was elected in Kings county and took office, and the authority of the Attorney-General to continue his investigation and prosecution was questioned. The court said: " It will serve to narrow the discussion if the fact is made clear that the respondents [the Attorney-General] are not attempting to investigate any occurrences during the term of office of the present district attorney. If they were, a different question would be presented *for it is not to be supposed that the statute was intended to sanction unrestricted and interminable investigations by the Attorney-General.*" (Italics and matter in brackets supplied.)

From the foregoing decisions the conclusion is inevitable that the powers of the Attorney-General are only those which are granted by our State Constitution and by enactments of our Legislature. The constitutional amendment of 1925 eliminated the pre vious reference to the powers of the Attorney-General and established a new system of *civil* State departments, including a Law Department, and by section 3 of article V authorized the Legislature to assign the particular functions of each department. The Legislature assigned to the Attorney-General as the head of the Law Department, " all the powers and duties conferred or imposed upon him by law " which means of course statutory powers but not common-law powers. (*Brinckerhoff* v. *Bostwick, supra.*) Article 6 of the Executive Law contains a statement of many of these powers; others are found in various other statutes such as sections 262, 263 and 264 of the Code of Criminal Procedure relating to violations of article 74 of the Penal Law having to do with offenses against the elective franchise, and in article 22 of the General Business Law.

The powers of the district attorneys of the counties of our State are not found in the Constitution which provides for their election by the People in their respective counties (Art. IX, § 5) but are defined in article 11 of the County Law and in various provisions of the Penal Law, the Code of Criminal Procedure, and other statutes having to do with the enforcement of the criminal law. Subdivision 4 of section 200 of the County Law, in part, reads: " It shall be the duty of every district attorney to conduct all prosecutions for crimes and offenses cognizable by the courts of the county for which he shall have been elected or appointed."

If the historical development of the authority of the respective

offices of Attorney-General and district attorney is considered (See *Matter of Turecamo Contracting Co.* and *Matter of Cranford Material Corp., supra*), there is no difficulty in reconciling the apparent conflict of authority. The district attorney is wholly responsible for the investigation and prosecution of all crimes and offenses occurring within his county. The Attorney-General *may* investigate and prosecute in cases involving article 22 of the General Business Law, he may under certain circumstances investigate and prosecute violations of the elective franchise as provided in sections 262, 263 and 264 of the Code of Criminal Procedure and he must investigate and prosecute as directed by any legislative enactment such as is provided under section 62 of the Executive Law. While such investigations may even include that of the office of a district attorney, the scope of any such investigation is limited to the statutory authority upon which it is based. (*Matter of Turecamo Contracting Co., Matter of Cranford Material Corp.*, and *Ward Baking Co.* v. *Western Union Telegraph Co., supra.*)

The present investigation in Queens county by the Attorney-General which resulted in the finding of the indictment against the defendant Dorsey is being conducted under the provisions of article 22 of the General Business Law and particularly under sections 340, 341 and 347. The last section (347) grants authority to the Attorney-General for investigation and prosecution on his own initiative, without the necessity of an order from the Governor. It reads: " The Attorney-General may prosecute every person charged with the commission of a criminal offense in violation of the laws of this State, applicable to or in respect of the practices or transactions referred to in this article. In all such proceedings, the Attorney-General may appear in person or by his deputy before any court of record or any grand jury and exercise all the powers and perform all the duties in respect to such actions or proceedings which the district attorney would otherwise be authorized or required to exercise or perform; or the Attorney-General may in his discretion transmit evidence, proof and information as to such offense to the district attorney of the county or counties in which the alleged violation has occurred and every district attorney to whom such evidence, proof and information is so transmitted shall forthwith proceed to prosecute any corporation, company, association, or officer, manager or agent thereof, or any firm or person charged with such violation. In any such proceeding, wherein the Attorney-General has appeared either in person or by deputy, the district attorney shall only exercise such powers and perform such duties as are required of him by the Attorney-General or the Deputy Attorney-General so appearing."

The question is, does this section limit the Attorney-General to the prosecution of persons, corporations, etc., for practices and acts which constitute violations of the statutes against monopolies, that is, to the specifically prohibited acts embraced by sections 340 and 341 of the General Business Law, or does it include other violations of the laws of our State which violations were incidental to and part of the plan or process by which the statutes against monopolies were violated. With complete respect for the rule that penal statutes must be strictly construed, the conclusion is inescapable that section 347 of the General Business Law is a legislative grant of great power and authority to the Attorney-General to provide him with adequate means for enforcing the provisions of sections 340 and 341 of the General Business Law. It is urged that the Attorney-General is limited to the investigation and prosecution of violations of sections 340 and 341, all of which violations are misdemeanors. A reading of the first sentence of section 347 clearly indicates no such limitation. It states: " The Attorney-General may prosecute every person *charged with the commission of a criminal offense in violation of the laws of this State*, applicable to or in respect of the practices or transactions referred to in this article." (Italics mine.) Had the Legislature intended to limit the powers of the Attorney-General to the prosecution of misdemeanors it could have done so by some appropriate limitation such as " The Attorney-General may prosecute every person charged with the commission of a violation of article 22 of the General Business Law." The statute as it stands must be construed to mean that the Attorney-General has the authority to prosecute for any criminal offense in violation of any law of this State, provided that such offense is applicable to or in respect of violations of article 22 of the General Business Law. That is, if the Attorney-General shall find evidence that violations of article 22 of the General Business Law were accomplished by means of the commission of other crimes, then he has authority to prosecute those whose crimes were committed as part of the means, plan or scheme by which violations of such article were effected. Any criminal act done in the furtherance of a violation of such article must be deemed subject to investigation and prosecution by the Attorney-General. To hold otherwise would defeat the very purpose of the act. To illustrate, assume that an investigation by the Attorney-General should disclose that an unlawful monoply in violation of article 22 was accomplished by means of arson, felonious assaults, extortion, forgery, bribery or even murder. Can it be said that the Attorney-General is precluded from investigating any or all of such felonies which were the means of creating the unlawful

monopoly? Is he to cease investigating the moment evidence discloses a felony? Is he precluded from fully pursuing by investigation and prosecution every criminal offense which contributed to the establishment of the unlawful monopoly? When the evidence is at hand and immediately available for presentation to the grand jury, must he refuse to proceed because it involves a felony, even though such felony may have been the sole means by which the unlawful monopoly was created? Such questions indicate the absurdity of any such suggested limitation of power and authority. It must be held that the Attorney-General has absolute power and authority to investigate and prosecute any offense which is part of the means by which the illegal practices or transactions condemned by article 22 of the General Business Law were accomplished.

The next question presented by this application is as to whether the Attorney-General had the power and authority to present the evidence to the grand jury and to prosecute this indictment which they returned, charging this defendant with the crime of perjury. The indictment charges this defendant with a violation of section 1620-a of the Penal Law — perjury in the first degree — in that on or about March 27, 1941, the defendant, while a witness before the grand jury which was investigating alleged violations of sections 340 and 341 of the General Business Law, knowingly and willfully testified falsely that certain books, ledgers and canceled checks of Tully and Di Napoli, Inc., had been destroyed by the witness between September 1, 1939, and November 25, 1939, when in truth and in fact said books, ledgers and canceled checks had not been destroyed as defendant well knew; and that said testimony was material to the matter under investigation. Assuming that the indictment is correct in form, and assuming that it is based upon none but legal evidence, can the indictment be sustained under the broad grant of powers and authority conferred upon the Attorney-General by section 347 of the General Business Law? Nothing in the indictment, and nothing in the motion papers, briefs or oral arguments suggests that the defendant Dorsey was at any time, place or manner connected with any acts, practices or transactions involving any violation of any provision of article 22 of the General Business Law, nor is it suggested that the destruction of the books, ledgers and canceled checks, or the failure to destroy them, or the alleged false testimony with reference to their destruction, is in any manner an act, or practice or transaction applicable to or in respect of a violation of any provision of article 22 of the General Business Law in which the defendant Dorsey participated. A somewhat similar situation arose in

Queens county thirty-one years ago when the Attorney-General under an order issued by the Governor of the State was conducting an investigation in this county under subdivision 2 of section 62 of the Executive Law, as to any criminal charges arising or growing out of or based upon any purchase of land by the city of New York for Kissena Park. One John Welz was called by the Attorney-General as a witness and as such witness offered in evidence before the grand jury a certain document, which, it was charged, was known to Welz as having been fraudulently altered. After Welz gave such evidence to the grand jury, that body, under the management and conduct of the Attorney-General, returned an indictment against Welz charging him with a violation of section 810 of the Penal Law — (using forged or fraudulently altered evidence — a felony). Said the court, *People* v. *Welz* (70 Misc. 183): " The question, therefore, arises whether the investigation and indictment were respectively made and found within the scope of the requirement of the Governor. There is no allegation in the indictment, in words or by fair legal inference, that the defendant was in any way connected with the purchase of land for Kissena Park, or that, before the consummation of said purchase, he had directly or indirectly undertaken to do any act which could be construed as an act arising, growing out of or based upon the purchase of the land. In the absence of any such allegation the offer for which the defendant was indicted stands disconnected from any other acts arising out of the purchase which might form the basis of a criminal charge. The act of the defendant was at most collateral. It was without the scope of the investigation, not being within its expressed or legally inferable purposes." The court thereupon dismissed the indictment.

Here we have an almost precisely similar situation. Broad as the powers of the Attorney-General are under section 347 of the General Business Law, his acts and proceedings, his investigations and prosecutions are limited to the boundaries of that section, as they have been defined above. When he presented the evidence to the grand jury upon which they returned this indictment against the defendant Dorsey, he was dealing with a subject entirely disconnected with any acts, practices or transactions condemned by article 22 of the General Business Law. So far as the entire record discloses Dorsey was not in any manner connected with any such act, practice or transaction at any time. Consequently the Attorney-General was without authority to appear before the grand jury to present evidence of the alleged perjury, and the Attorney-General concedes that he did so appear, and did present the evidence upon which this indictment was found. Such appear-

ance comes within the provisions of section 313 of the Code of Criminal Procedure which provides that an indictment must be set aside upon the motion of the defendant, when it appears that an unauthorized person has been permitted to appear before the grand jury while the charge embraced in the indictment was under consideration.

The motion is for an inspection of the grand jury minutes, and for other and further relief. The motion papers state that if such an inspection is granted, a motion to dismiss the indictment under section 313 of the Code of Criminal Procedure is contemplated. In view of the determination arrived at, the indictment is dismissed under the prayer for other and further relief.

Submit order on five days' notice to the Attorney-General.