Love, J.
(dissenting). The appeal is from a judgment of the County Court of Ontario County, rendered on March 13, 1946, convicting defendant of the crime of rape in the second degree.
A certificate of reasonable doubt was granted by a Justice of the Supreme Court on March 20,1946.
The only question raised is as to the denial of a motion to dismiss the indictment brought upon ah order to show cause on March 8, 1946, on the ground that an unauthorized person was permitted to be present during a session of the grand jury which indicted defendant.
The motion was denied on March 9, 1946, and trial begun on March 11, 1946. The motion was again made upon the trial and denied.
The defendant had also asked an inspection of the minutes of the grand jury for the purposes of .the motion for dismissal of the indictment.
Inspection became unnecessary as the District Attorney conceded the presence during the session, of the grand jury of Hilma Harris, while her sister Camille Harris Minet, was testifying as to the charge against defendant.
The motion to dismiss the indictment was made under subdivision 2 of section 313 of the Code of Criminal'Procedure.
The pertinent provision is, “ § 313. Indictment, lohen set aside on motion. The indictment must be set aside by the court in which the indictment is arraigned, and upon his motion, in either of the following cases, but in no other: * * *
2. When a person has been permitted to be present during the session of the grand jury, while the charge embraced in the indictment was under consideration, except as provided in sections two hundred and sixty-two, two hundred and sixty-three and two hundred and sixty-four.” (Amd. by L. 1897, ch. 427.)
Hilma Harris was not one of the persons permitted to be present during the session of the grand jury by the provisions of sections 262, 263 and 264 of the Code of Criminal Procedure.
Nor, although she was sworn, did she give any necessary or material testimony.
The District Attorney maintains the presence of the two sisters as “ witnesses ” at the same time was lawful and proper and that the defendant’s rights were in no wise prejudiced by *350 the appearance of the two “ witnesses ” before the grand jury at the same time.
Administering an oath to a person who knew nothing of the matter under investigation, testified to nothing necessary or material to the issue and was not sworn at all on the trial does not make her a witness.
Nor, even if it did, does the statute permit the presence of any unauthorized person, whether or not he is a witness, during the session of a grand jury while a charge is under consideration and a bona fide witness is testifying.
The County Judge joined the District Attorney in relying upon the absence of prejudice, undue influence or force to justify the unauthorized person’s presence before the grand jury.
There is no such test.
The statute is mandatory.
The'fact that there has been no case similar to this one called to our attention, or found by me, attests the obedience to the section by grand juries and prosecutors as to the unauthorized presence of laymen.
There are cases involving the presence, forbidden by this section, of lawyers who were not within the provisions of sections 262, 263 and 264.
In People v. Scannell (36 Misc. 40) a special counsel employed by the District Attorney examined witnesses and advised the grand jury on questions which arose. He was not an assistant district attorney, not a public official and had taken no oath.
Justice Gtildebsleeve said in his opinion: “ The statute is explicit and mandatory.' It leaves no discretion with the court, but declares that, under circumstances like these, the indictments must be set aside. Mr. Ordway, as we have seen, was without official authority to represent the State as prosecuting officer before the grand jury. The sanction of the judge, presiding over the court in which the grand jury was serving, conferred no authority. No excuse for his attendance there can prevail over the law. The precise question here involved was directly passed upon by Mr. Justice Cullen, now of the Court of Appeals, in the case of the People v. Patrick J. Ring, which arose in Richmond county, in May, 1899, and this position upheld. Mr. Justice Cullen, being convinced of the irregularity of the proceeding, promptly granted the motion. I follow the ruling of this eminent jurist.
“ In view of the conclusion I have reached on the point above discussed, it becomes unnecessary to consider the claims of the *351 defendants that the grand jury was influenced in the finding of the. indictments by incompetent and illegal evidence. * ° *
The motions of the defendants must be granted, and the indictments set aside.”
The decision of the court is founded on the mere presence of the unauthorized person.
There could be no question of prejudice, undue influence, force or silent effect upon a witness there, as there could be with a layman present, whose mere presence could bring about the desired testimony from a witness, through fear, since the special counsel must have been trusted when employed by the District Attorney.
In the case of People ex rel. Lawton v. Snell (216 N. Y. 527, 532-533) (a case involving the sections of the Code of Criminal Procedure providing that an arresting officer ££ £ must ’ take the defendant before the magistrate of the county of defendant’s residence in order that he may take the undertaking * * * and, the undertaking being given, he £ must ’ discharge the defendant 19 * * and thereupon the officer ‘ must ’ deliver the warrant indorsed- with a certificate of discharge ”) it is held: “ While the word ‘ must,’ when used in statutes, is not universally and necessarily mandatory (Jenkins v. Putnam, 106 N. Y. 272; Matter of Thurber, 162 N. Y. 244, 252), here, indubitably,, the directions of the sections are mandatory and imperative.”
A grand jury is clothed with power to determine both the facts and the law, and its methods of procedure, so far as they are not discretionary, are fixed by statute and not by rules of courts. (People v. Glen, 173 N. Y. 395, 401.)
The secrecy of the grand jury is for the protection of the citizen.
The grand jury ££ is in fact a preliminary tribunal, and it is furnished with inquisitorial powers only for the purpose of examining into crimes. The origin and the purpose of the grand jury was, as I have shown, for the protection of the citizen. It was rightly said by Judge Kietg, in the case of Lloyd and Carpenter, 5 Penn. L. J. 62: ‘ Grand juries are high public functionaries, * * * They are the great security to the citizen against vindictive persecutions, either by government, or by political partisans, or by private enemies. In their independent action, the persecuted have found the most fearless protectors; and in the records of their doings are to be discovered the noblest stands against the oppression of power, the virulence of malice, and the intemperance of prejudice.’ ” (Matter of Gardiner, 31 Misc. 364, 367.)
*352 “ The grand jury had its origin at a time when there raged a fierce conflict between the rights of the subject and the power of the crown. It was established to secure to the subject a right of appeal to his peers, under the immunity of secrecy and irresponsibility, before the government could bring him to trial. It was a right wrung from the government to secure the subject against oppression. * * * The constitution of the United States, and the constitutions of all the States, show that it is adopted here as a means of protection to the citizens, as well as a necessary aid to public justice.” (People v. Naughton, 7 Abb. Prac. [N. S.], 421, 426-427.)
The conception of the operation of the grand jury held throughout the ages is put into clear form in the Federal Rules of Criminal Procedure, adopted by the United States Supreme Court in 1946, subdivision (d) of rule 6, reading: “ (d) Who may be present. Attorneys for the government, the witness under examination, interpreters when needed and, for the purpose of taking the evidence, a stenographer may be present while the grand jury is in session, but no person other than the jurors may be present while the grand jury is deliberating or voting. ’ ’
Beyond question, the formal appearance of counsel before the grand jury compels the court to set aside or quash the indictment on motion duly made. (People v. Kramer, 33 Misc. 209; People v. Scannell, 36 Misc. 40, supra.)
“ It is thus to be seen with what profound concern the courts consider the necessity for preserving the safeguards of the traditional grand jury, and its background in principle and theory. This principle is very forcibly stated in a Massachusetts case. In Matter of Opinion of Justices ([Supreme Judicial Court of Massachusetts] 123 N. E. 100) the court, advising the Legislature that a bill permitting the presence of a police officer during the examination of witnesses before the grand jury would be unconstitutional, said: * “ The law of the land ” implies an indictment or presentment by the grand jury in instances to which that proceeding is necessary. The grand jury is an ancient institution. It always has been venerated and highly prized in this country. It has been regarded as the shield of innocence against the plottings of private malice, as the defense of the weak against the oppression of political power, and as the guard of the liberties of the people against the encroachments of unfounded accusations from any source. These blessings accrue from the grand jury because its proceedings are secret and uninfluenced by the presence of those not officially and necessarily connected with it. It has been the *353 practice for more than two hundred years for its investigations to be in private, except that the district attorney and his assistant are present. Secrecy is a vital requisite of grand jury procedure.’ ” (People v. Fuller, 156 Misc. 404, 418.)
While it has been held that “ it is doubtful if the presence of the deputy attorney-general before the grand jury was unlawful at any time, in view of the history of the office of Attorney-General and the powers and duties which have been incident to it from the earliest days of its existence ” (People v. Glasser, 60 Misc. 410, 414) it was also held that “ while the letter of the Secretary of State * * * may constitute some color of authority, were it to stand alone as the only authority for the Attorney-General’s appearance before the grand jury, I would feel constrained to grant the pending motions ”, which were the same as the instant one. (People v. Tru-Sport Publishing Co., Inc., 160 Misc. 628, 633.)
They were denied only because of the history of the two offices of Attorney-General and District Attorney, which it was held gave them the right to co-operate in the presentation of evidence.
There is significance in the fact that in the collation of authorities upon the question herein in 1912D American and English Annotated Oases (p. 184), in 33 Lawyers’ Reports, Annotated, ¡New Series (p. 568 el seq.) and in 28 Lawyers’ Reports, Annotated (p. 367 et seq.) all relate only to the presence of special counsel, attorneys-general or assistant district attorneys whose authority to be there was brought into question.
I find no cases where a layman was permitted to be present when a witness was being examined.
An examination of the authorities in other States discloses distinctly different statutes than ours.
. The forbiddance of those statutes is directed against the presence of an unauthorized person in the grand jury when they “ were voting upon the question»of returning an indictment ”, only, (Fooshee v. State, 3 Okla. Cr. 666, 677) (Snyder’s Comp. Laws of Okla., § 6738), “ while they were deliberating on the case; that is, taking action with reference to finding a bill ” (Mason v. State, 81 S. W. 718, 719 [Tex.], supra), and while they “ were deliberating upon the accusations against the defendant, or were voting upon the same ”. (Code of Criminal Procedure of Texas, art. 506.)
Our statute provides that an indictment must be set aside when a person has been permitted to be present during the session of the grand jury, while the charge was under consideration *354 not merely when they were voting as to whether or not a bill should be found.
Significantly, there is here no mere limitation to the forbid-dance at the time of voting only.
The word “ consideration ” as against the words “ deliberating upon the accusation ” and “ voting upon the question of returning an indictment ”, found in the statutes of other States, is all-inclusive of the working time of the grand jury.
Section 264 of the Code of Criminal Procedure after authorizing the presence of official prosecutors definitely excludes the presence of a district attorney, attorney-general, officer or other person (who could be only a stenographer) “ during the expression of their opinions or the giving of their votes upon any matter. ’ ’
Thus we see that our statutes forbid the presence of unauthorized persons at all times and even of authorized persons while the jury is expressing their opinions or giving their votes.
In this connection Mr. Justice Bbewsteb wrote: “ However, since it is the theory and policy of our criminal procedure that only the regularly constituted authorities upon whom the law devolves the power so to do, may officiate in aid of the grand jury, and since a strictly accurate definition of the word ‘ consideration,’ as used in subdivision 2 of section 313 of the Criminal Code, would render meaningless the exception there pointed to, the other sections of said Code there referred to, I am of the opinion that this word must be held to refer to all the proceedings had in the .grand jury room in so far as including the reception of evidence, and the ultimate action upon it.” (People v. Tru-Sport Publishing Co., Inc., 160 Misc. 628, 636, supra.) (Italics supplied.)
It is thus cleár that the statute forbids the appearance of Hilma Harris while her sister was testifying.
Were this not so, the entire conception of the grand jury, its place in our system and the age,-old ideas of its operation would be placed in grave peril.
Permitting the presence of an unauthorized person in the grand jury room while another was testifying is capable of destroying all of the common-law and statutory protection of its operation and of individual rights.
Untold wrong could be done a citizen against whom someone has, rightfully or wrongfully, placed an accusation by permitting the presence of an unauthorized person, whose mere presence, whether having gone through the formality of being sworn, or not, could have an improper effect upon the jury or the witness *355 or witnesses who saw him in the grand jury room while they were testifying.
It could result in the presence of all lay persons, whether they knew anything about the case or not, all police officers, detectives, and sheriffs, all clergymen, citizens and newspaper men interested in crusades, exposes and accusations by the mere device of taking an oath. Who can tell what the effect of such presences would have upon the truth of the testimony of the ordinary witness or the votes of the members of the grand jury?
Carried to the extreme it could result in the presence of all persons sworn before the jury remaining there while a number of varied cases were being presented to the jury against a number of accused persons throughout the day or even the term.
A typical case of an unauthorized adviser is that of the presentment made against Asa Bird Gardiner, District Attorney of New York County but which merely called attention to alleged evil things in general without an indictment against the District Attorney.
The court wrote: “ Second. The grand jury plainly violated section 262 of the Code of Criminal Procedure in seeking advice other than that of a judge of the court or the district attorney of the county. It appears that the Rev. Charles H. Parkhurst appeared as a witness and was sworn and, after describing the society of which he is the president, and giving some hearsay testimony as to the police department, was asked and answered as follows: ‘ Q. (By a juror) How would you suggest we would now proceed in this matter in order to secure the most effective results? A. When I came before the grand jury in 1892, the same question was put to me; I took the liberty of saying to the gentlemen that I doubted whether any particular indictments that were found would be available; but if they saw their way clear, to make a presentment in regard to the general condition of the force, I thought it would be helpful; the help was immense.’
“ This was doubtless said and done with the best of intentions, but the statute prescribed who shall be the advisers of the grand jury. Even the accused whose rights the grand jury was established to protect cannot be represented by counsel before it, much less the accuser. The mere presence in the grand jury room of such an adviser or any advisers other than those prescribed therein, is made by the statute imperative ground for setting aside the indictment. When such an adviser is not only present, but is asked to give liis opinion under cover of testifying to facts within his personal knowledge, it is the plain duty of the court to set aside the indictment, or in this case, the presentment.
*356 “ That the grand jury asked for, accepted, and received the advice of a person other than the ones prescribed by statute, is evident from the question and answer referred to.
“ The illegality of these proceedings does not depend solely on the Code; it is a principle of universal law that persons shall not be allowed to appear as solicitors before the grand jury. In Commonwealth v. Salter, 2 Pears. (Penn.) 466, the Court said, ‘ The right of neither the commonwealth nor the accused is to be jeopardized by the presence and action of such an intruder.’
“ Mr. Justice Field, in the charge to which 1 have already referred, directed, in strong terms, the grand jury not to allow private prosecutors to intrude themselves into the grand jury room and present accusations. On this subject he dwrelt at length and referred to high authority urging the importance of securing grand juries against "outside influence and improper interferences, which he says if allowed would introduce a flood of evils disastrous to the purity of the administration of justice and subversive of all confidence in the action of this legal body.” (Matter of Gardiner, 31 Misc. 364, 372-373, supra.)
The crusading Dr. Parkhurst was in little, if any, different, position than Hilma Harris, save that he was asked a question by a juror. He was sworn and gave nothing save incompetent hearsay testimony prior to the question.
It should be seen at once that this is so repugnant to the entire tradition of the grand jury as to destroy it.
The law is explicit and mandatory and admits of no alteration by courts in instances which would whittle away the rights of an accused by “ exceptions.” because naturally he could not show that he had been prejudiced, no matter what happened in the jury room.
An affirmance of this judgment would, despite defendant’s guilt, the nature of the crime and the possible harmlessness of the unauthorized person’s presence loose the flood gates for irreparable injury to citizens and the grand jury system.
The section must be enforced in all cases, not in chosen ones only.
It has been stated, in a leading decision, that a presumption of unauthorized advice arises from the presence of an unauthorized person in the grand jury room.
Who is to say that in this instance, the elder sister of two younger ones, both of whom had been seeking men, one sister, the1 defendant and the other, another man connected with his place of business, did not in truth, no matter what was said to the District Attorney, find herself in the grand jury room because *357 otherwise the young sister would have refused to testify as she stoutly did refuse before the County Judge and jury on the trial despite repeated directions of the County Judge to answer?
She flatly refused to answer in terms several times, merely made no reply several times and insisted that no one had told her to do so. Her personal counsel and defendant’s counsel had not done so.
On March 11,1946, during the trial the County Judge ordered her into immediate custody saying “ The court proposes to talk to this girl ”, revoked defendant’s bail and recessed until the following morning, when she testified.
Despite the fact that she had married defendant on February 23, 1946, this hardly presents a picture of a girl too timid to go into the grand jury without her sister.
In the trial courtroom with the court and the District Attorney • attempting to get her to answer questions she stood firm, saying • “ He can’t force me to ” on one occasion when ordered to answer" by the court, until the occurrence of whatever it was that happened between the court and herself after she was ordered into custody.
It is doubtless true that in many instances, young girls and young boys, witnesses in rape or sodomy cases, have sought to have a parent go into the grand jury room, unsuccessfully, and even though it took more suasion than was required here, the testimony was finally obtained without violation of the section.
The presence of an accountant assisting the "United States attorney, or of an illegally appointed aid to the United States attorney is improper. (United States v. Virginia-Carolina Chemical Co., 163 F. 66; United States v. Rosenthal, 121 F. 862.)
No person, other than a witness undergoing examination and the Government attorney, can be present at the session of the grand jury and an indictment should be quashed where an expert witness remained in the jury room while another witness was being examined and put questions to him.
“ It is beyond question that no person, other than a witness undergoing examination, and the attorney for the government, can be present during the sessions of the grand jury.” (United States v. Edgerton, 80 F. 374.) (Italics supplied.)
In United States v. Heinze (177 F. 770) the indictment was quashed because an accountant, who was not an attorney at law, under color of an appointment as special assistant to the United States attorney, was present in the grand jury suggesting the method of examining expert witnesses thought to be allied with the defendant.
*358 Judge Hough wrote: “ No suggestion of personal misconduct or indecorous behavior is made against Mr. Fernsler, nor is it shown or suggested that any injury has been done to defendant by Mr. Fernsler’s presence, unless it be the suspicion that it is to Mr. Fernsler’s skill in reading and interpreting books of account that this indictment is largely due * * *. If there be a settled method of conducting the deliberations of grand jurors, established by generations of procedure, based on the experience of many courts in many communities, and evidenced by the decisions of authoritative tribunals, such method must be followed until the Legislature sees fit to overturn the old rule.” (Pp. 771-772.)
“ An excused or pardoned illegality is frequently unimportant, but a justified illegality, however trivial in itself, is of the highest importance.
“ It need only be added that no reason is seen for departing from the general view of grand jury procedure expressed in the cases of Farrington' (D. C.) 5 Fed. 343, and Edgerton (D. C.) 80 Fed. 374.
“ The motion to quash is granted.” (P. 774.)
“No person may be admitted to the presence of a grand jury except the district attorney of the county, his assistant, a witness and the stenographer who keeps the minutes. (Code Crim. Proc., §§ 264, 952-p.) ” (Ward Baking Co. v. Western Union Telegraph Co., 205 App. Div. 723, 728.) (Italics supplied.)
The English rule is for “ ‘ The grand jury to sit by themselves and hear the witnesses one at a time, no one being present except the solicitor for the prosecutor if he is admitted.’ 1 Stephen’s History of the Criminal Law of England, 274. * * * The contention of the Commonwealth that the burden is upon the defendant to show he was injured by action of the grand jury is unsound, because in the nature of things it would be impossible to prove the fact, if true, before the jury trial and because the wrong complained of is the violation of a substantial right guaranteed by the Declaration of Eights, and is not a mere failure of the grand jury to observe technical requirements and formalities [citing cases].” (Commonwealth v. Harris, 231 Mass. 584, 586-587.)
The conviction should be reversed and the indictment dismissed.
All concur with Dowling, J., except Larkin and Love, JJ., who dissent and vote for reversal and for dismissal of the indictment, in an opinion by Love, J., in which Larkin, J., concurs. Present — Taylor, P. J., Dowling, McCukn, Larkin and Love, JJ.
Judgment of conviction affirmed.