In the Matter of the Application of CRANFORD MATERIAL CORPORA-
TION and FRANK MORSE, Petitioners, for an Order Vacating
Subpœna.

Supreme Court, Extraordinary Special and Trial Term, Kings County,
April 29, 1940.

*Littleton & Levy,* for the petitioners.

*John J. Bennett, Jr., Attorney-General [John Harlan Amen,
Assistant Attorney-General,* of counsel], for the People of the State
of New York.

MACCRATE, J. Motion denied. The denial, however, is not
predicated on any assumed common-law power in the Attorney-
General to issue subpœnas for and to attend grand jury sessions.

The motion serves to point the distinction between the powers of a grand jury convened under an executive order pursuant to section 62 of the Executive Law and the powers of the Attorney-General. By the Constitution it is declared there can be no suspension of the powers of a grand jury to inquire into willful misconduct of public officials (State Const. art. I, § 6). The motion is indicative of future attack on any indictment that may result in the inquiry now being made by the grand jury into alleged misconduct of public officials. The present motion challenges the power of the Attorney-General to issue subpœnas. Subsequent motions will undoubtedly question the right of the Assistant Attorney-General to be present in the grand jury room. From the papers here it appears that the inquiry is directed to misconduct of officials " in the enforcement of law." For such an inquiry the Attorney-General has the power of the district attorney to issue subpœnas. We need not now determine what, if any, effect the presence of the Attorney-General will have on possible indictments or whether, under the Governor's orders, the Attorney-General can conduct the prosecution of any such indictment. A consideration of the constitutional and statutory history of the powers of the offices of Governor, Attorney-General and district attorney leads to the conclusion that an executive requisition, limited in scope as to matters to be taken in charge by the Attorney-General, does not spend its force when one person succeeds another as district attorney. Therefore, while the claim of power in the Attorney-General to assume at will the prosecution of all crime in a county cannot be sustained, after consideration of the constitutional and statutory provisions herein mentioned, there is power to carry on within the limits prescribed by the executive orders. When the Governor requisitions the Attorney-General to enter into a county, he calls for the exercise by that official of a power given by the Legislature to the office of Attorney-General to prosecute crime. The Legislature has also directed that the powers of the office of district attorney shall not be exercised as to matters set forth in an executive order save as requested by the Attorney-General. No general act takes from the office of Attorney-General power to prosecute crime. Section 62 of the Executive Law recognizes the existence of the power but states conditions that must be present precedent to the exercise of the power. It does not, however, declare that the election of a new district attorney is a condition subsequent limiting the exercise of power by the Attorney-General. There is no constitutional prohibition of legislation which may authorize the Governor to declare that circumstances exist justifying limited suspension of the execution of powers of prosecution by the office of district attorney. That authority

has been exercised from the beginning of our history as a State. It is not an incident of the removal power of the Governor. It existed when district attorneys were removable by the County Court.

Therefore, *People ex rel. Wogan* v. *Rafferty* (208 N. Y. 451) or *Warner* v. *The People* (2 Den. 272) are not applicable. The district attorney's office has not been sheared of power unconstitutionally. The Legislature, under the Constitution, has provided a reasonable method to enable the Executive to fulfill his duty to see that the laws are enforced.

The Constitution declares that the Governor shall take care that the laws are faithfully executed (Art. IV, § 3). Power of removal of district attorneys is vested in the Executive (Art. IX, § 5).

Section 6 of article V of the State Constitution prior to January, 1926, declared that the powers and duties of the Attorney-General should be such " as now are or hereafter may be prescribed by law." The expression " prescribed by law " refers to statute and not general law. (*Brinckerhoff* v. *Bostwick*, 99 N. Y. 185, 190.)

Section 62 of the Executive Law is former section 52, with amendments. (Laws of 1892, chap. 683.) When the Constitution of 1894 was adopted, section 52 declared the Attorney-General shall " prosecute and defend all actions and proceedings in which the State is interested." That language imposed a duty and granted power. If that section by its other provisions, or any other statute did not restrict the exercise of power by or relieve the Attorney-General of the duty to prosecute or declared the duty to prosecute to be at the discretion of the Attorney-General or only on happening of some event, such as an executive requisition, or limited the duty to specific matters, then the Attorney-General can and must go into every county in the State and assume responsibility for the prosecution of criminal actions.

By the amendment to section 3 of article V, effective January, 1926, the Legislature was directed to provide for the assignment of functions to the Department of Law. Meanwhile the powers of the office of Attorney-General were continued.

Thereafter the Legislature enacted by chapter 347 of the Laws of 1926 (State Departments Law, § 181): " There are hereby assigned to the Department of Law all the functions, powers and duties of the Attorney-General, as now prescribed by law, other than as a member of a board or commission."

Section 62 of the Executive Law still provides that the Attorney-General shall prosecute and defend all actions and proceedings in which the State is interested. There is, however, provision made for prosecution by him under stated circumstances. Subdivision 2 of said section reads:

" 2. Whenever required by the Governor, attend in person, or by one of his deputies, any term of the Supreme Court or appear before the grand jury thereof for the purpose of managing and conducting in such court or before such jury such criminal actions or proceedings as shall be specified in such requirement; in which case the Attorney-General or his deputy so attending shall exercise all the powers and perform all the duties in respect of such actions or proceedings, which the district attorney would otherwise be authorized or required to exercise or perform; and in any of such actions or proceedings the district attorney shall only exercise such powers and perform such duties as are required of him by the Attorney-General or the Deputy Attorney-General so attending. In all such cases all expenses incurred by the Attorney-General, including the salary or other compensation of all deputies employed, shall be a county charge."

It will be observed that the duty of the Attorney-General is limited to the management of " such criminal actions or proceedings as shall be specified in such requirement," and the powers and duties to be exercised and performed are those " which the district attorney would otherwise be authorized or required to exercise or perform." More limited were the provisions of former section 52, which specified " a criminal action or proceeding."

No statute directing district attorneys to step aside from the performance of their general duty at the request of the Attorney-General or requiring the Attorney-General to give notice to the district attorney or Governor that he has assumed such duty has been called to our attention.

Constitutional provisions for the election of district attorneys were contained in the Constitutions of 1846 and 1894. Their duties were not defined by the Constitutions. As in the case of the Attorney-General, their duties and powers were proper subjects for legislative control.

Subdivision 4 of section 200 of the County Law provides: " It shall be the duty of every district attorney to conduct all prosecutions for crimes and offenses cognizable by the courts of the county for which he shall have been elected or appointed."

The Code of Criminal Procedure declares:

" § 262. The grand jury may in any case ask the advice of any judge of the court, or of the district attorney of the county, or, if the matter or thing concerning which they desire advice relates to crimes against the elective franchise, as defined in article seventy-four of chapter forty of the Consolidated Laws, of the Attorney-General, or of any of his assistants, deputy assistants or attorneys, regularly or specially employed by him, who have taken the constitutional oath of office.

" § 263. Whenever required by the grand jury, it shall be the duty of the district attorney of the county to attend them for the purpose of examining witnesses in their presence, or of giving them advice upon any legal matter, and of issuing subpœnas or other process for witnesses. Whenever required by any grand jury, in matters or things relative to violations of the provisions of article seventy-four of chapter thirty-nine of the Consolidated Laws, it shall be the duty of the Attorney-General, his assistants, deputy assistants and attorneys, regularly or specially employed by him, who have taken the constitutional oath of office, to attend them for the purpose of examining witnesses in their presence or of giving them advice upon any legal matter relative to crimes against the elective franchise, and the issuing of subpœnas or other process for witnesses.

" § 264. The district attorney of the county, an assistant district attorney, or in the county of New York, or in the county of Kings, or in the county of Bronx, an attorney regularly in the employ of the district attorney of the said counties, who shall be under salary paid by the said counties and who shall have filed in the office of the county clerk of the said counties the constitutional oath of office, or in counties having no assistant district attorney an attorney appointed by a justice of the Supreme Court upon the nomination of the district attorney to attend upon the grand jury, or in relation to the investigation or presentment of crimes against the elective franchise as defined in article seventy-four of chapter thirty-nine of the Consolidated Laws, the Attorney-General, his assistants, deputy assistants and attorneys regularly or specially employed by him who have taken the constitutional oath of office, must be allowed, at all times, to appear before the grand jury of any county at the request of the district attorney or of the Attorney-General for the purpose of giving information relative to any matter before them, but no district attorney, Attorney-General, officer or other person shall be present with the grand jury during the expression of their opinions or the giving of their votes upon any matter."

" § 276. The indictment shall be signed by the district attorney, and may be substantially in the following form * * *."

Section 346 provides that notice of motions for removal of cases must be served on the district attorney. Likewise, notice of applications for bail must be given to the district attorney.

Manifest throughout the Code of Criminal Procedure is a legislative purpose to place in district attorneys the duty as well as the power of prosecuting crimes in their counties. Nowhere in that Code does there appear a general declaration of legislative intent that the Attorney-General may enter and prosecute at will in all

matters covered by the Code. Nowhere is there a requirement that the district attorneys shall in all cases make report to the Attorney-General of all the finished or unfinished business in their counties. That is, there is no general legislative recognition at the present day of any assistant relationship of a district attorney to the Attorney-General, such as was asserted to exist in *People* v. *Kramer* (33 Misc. 209). Significant are the amendments made to sections 262, 263 and 264 of that Code subsequent to *People* v. *Kramer* (*supra*) and other cases which declared a common-law power still existing in the Attorney-General to enter into criminal prosecutions at will. The limitation of the subject as to which the Attorney-General must be heard and may be consulted, viz., violations of the laws governing elections, certainly does not indicate that the Legislature assumed there was either duty or power vested in the Attorney-General at will to undertake all prosecutions of crime. Unchanged the Legislature continued section 313 of the Code of Criminal Procedure which grants the right to a defendant to move to dismiss an indictment if unauthorized persons appear before a grand jury. The Legislature by the amendments to sections 262, 263 and 264 emphasizes the legislative purpose to regulate the exercise of power by the Attorney-General in criminal matters. Early in the State's history, the general duty of the Attorney-General to prosecute criminal cases was limited. By chapter 8 of the Laws of 1796 it was declared:

" That except with respect to the Courts of Oyer and Terminer and Gaol Delivery in the city and county of New York, it shall be the duty of the several Assistant Attornies General to attend the Courts of Oyer and Terminer and Gaol Delivery and General Sessions of the Peace to be from time to time held within the districts for which they shall be appointed respectively, and to manage and conduct all suits and prosecutions for crimes and offences cognizable in the said courts, and *that except with respect to prosecutions at the Courts of Oyer and Terminer and Gaol Delivery in the city and county of New York any regulation or establishment of the office of Attorney General whereby it may be supposed his duty to manage and conduct all public prosecutions at the Courts of Oyer and Terminer and Gaol Delivery shall after the passing of this act cease.* (Italics ours.) *Provided nevertheless,* (italics in text) that whenever on any occasion, the person administering the government of this State or a judge of the Supreme Court of this State shall deem it requisite it shall be lawful for the person administering the government of this State or such judge by writing under his hand, to require the Attorney General to attend the Court of Oyer and Terminer and Gaol Delivery to be held in such county, and it shall be the duty of the Attor-

ney General to attend accordingly, and thereupon to manage and conduct at such court all suits and prosecutions against the persons charged with the offences, and the Assistant Attorney General for such district shall in such matters as appertain to his office, and shall be required of him by the Attorney General, aid in managing and conducting such suits and prosecutions. And it is hereby declared that for their services and expences on these occasions, the Attorney General and the Assistant Attorney General shall be deemed to be entitled to an additional allowance beyond the usual salary or other compensation, any allowance however to be determind by the Legislature as the respective occasions shall from time to time happen. * * *

" * * * *And be it further enacted* That it shall be the duty of the Attorney General to attend the Court of General Sessions of the Peace in the City and County of New York, and there to do and perform the like services as are hereby required of the Assistant Attornies General at the General Sessions of the Peace in the several counties of this State. * * * "

" Establishments " (Statutes, Bouvier [3d Rawle's Rev.], 3129) declaring duty are by this statute ended. Power remained but the occasion for its exercise was specified. The Code of Criminal Procedure and the Executive Law and other statutes authorizing criminal proceedings by the Attorney-General still recognize the power to prosecute. But they manifest the legislative intent that the Attorney-General shall not issue subpœnas or appear before a grand jury, at will, but only if and when and under the conditions set forth in the Constitution or some act of the Legislature. That body when it authorized the Governor to limit the subject-matter to be handled by the Attorney-General by section 62 of the Executive Law could have inserted a saving clause prohibiting the limitation in the event that the Attorney-General entered a county for general prosecution before or after the executive order. Apparently the legislative intent is to let the Executive and not the Attorney-General determine when the Attorney-General shall prosecute instead of a district attorney. The executive order, however, does not create power to prosecute. It is the occasion for its exercise. Of course, by an executive order calling upon the Attorney-General to enter a county the office of district attorney could not be stripped of all its power and the Attorney-General's office made perpetually the prosecuting office of a county. The executive orders under consideration attempt no such result. Read in the light of the circumstances giving rise to their making, the Attorney-General cannot assume the investigation and prosecution of matters not in existence during the term of the incumbent of the

office of district attorney of Kings county in January, 1939, save such matters as tend to hinder, obstruct or interfere with the investigation and prosecution required by the orders of October, 1938, and January, 1939. Until the term of the court called by the Governor is closed, the power and duty of the Attorney-General to take charge of the matters within the compass of the order continues. Equally true is it that the powers and duties of the office of district attorney of the county continue. The exercise of them as to given matters only has been suspended. There is, of course, the possibility that the two agencies may use the same witness in their respective spheres of power. The danger of granting immunity by one to a person thought by the other to be a proper subject of prosecution can be reduced to a minimum by adherence to the executive orders. The court, grand jury and prosecuting officials are bound to respect the limitations of the exercise of power placed on prosecuting officials under an executive order. The inability to foresee all circumstances requiring the entry of the Attorney-General, the resumption by each office of its normal functions, the necessity for having some limits to the duration of a term of court, and the expense incident to investigation, are considerations which undoubtedly influenced the Legislature to empower the Governor to determine when and what subject-matter within the powers of the office of district attorney shall be investigated and prosecuted by the Attorney-General. But it could not have overlooked the possibility that executive discretion might be exercised on the eve of the termination of the occupancy of the office of district attorney by a given person. The absence of any provision in section 62 of the Executive Law that the Attorney-General shall cease to function under the executive order whenever the occupant shall no longer be in office or shall be re-elected warrants the conclusion that neither event was to affect the exercise of power by the Attorney-General. But the exercise of power by the Attorney-General should be within the executive order. Otherwise there is danger that a term which could be called lawfully by the Governor only would in effect be one at the will of the Attorney-General producing indictments having questionable validity.

Notwithstanding there is power to issue a subpœna, the court will not compel production of everything mentioned in the one now before the court. The papers in opposition disclose that specific subjects are being investigated by the grand jury. The documents called for should have relevancy to those subjects. Nothing prior to 1937 is shown to be involved. These parties are presumed to be innocent. They cannot be compelled to produce every contract, every letter, every daily report and memorandum for 1935, 1936,

1937 and 1938 unless they are relevant and material. There is a particularization of documents that cannot be required to be stated in a subpœna when a grand jury is investigating. Nevertheless there can be no drag-net taking of corporate books. For the present it would seem that all contracts for public works in 1936, 1937, 1938 and all correspondence in relation to such work during 1936, 1937, 1938, canceled bank checks and vouchers 1937, 1938, 1939, bank statements 1937, 1938, 1939. general ledgers for 1937 and 1938, cash receipt books for 1937 and 1938, cash disbursement books for 1937, 1938 and 1939, job cost work sheets for 1936, 1937 and 1938 for public contracts, contract receivable journals 1936, 1937, 1938, contract receivable ledgers 1936, 1937, 1938, sales books for 1936, 1937, 1938, accounts receivable ledgers 1936, 1937, 1938, accounts payable ledgers 1936, 1937, 1938, director's minute books for 1936, 1937, 1938, 1939, stockholder's minute books for 1936, 1937, 1938, 1939, would be sufficient.

The instances wherein 1936 items have been allowed are warranted because of the claim that there were payments to public officials throughout 1937. The grand jury are entitled to investigate contracts, etc., for the year preceding.