of the crimes, and both of whom recognized defendant as the man they had previously seen in their neighborhood, constituted overwhelming proof of guilt (*see, People v Contes,* 60 NY2d 620, 621).

While the trial court should have expressly instructed the jury that the People's burden of proving defendant's guilt beyond a reasonable doubt attached to each and every element of the crimes charged, the significance of the requirement that defendant be proven guilty beyond a reasonable doubt was adequately explained, and we find that the charge, in its entirety, sufficiently conveyed the appropriate burden of proof to the jury (*People v Francis,* 99 AD2d 841).

We have considered defendant's other contentions and find them to be without merit. Brown, J. P., Rubin, Lawrence and Kunzeman, JJ., concur.

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STUART LIEBOWITZ, Appellant.—Appeals by defendant from six judgments of the County Court, Nassau County (Harrington, J.), all rendered May 16, 1984, convicting him of grand larceny in the second degree (three counts), grand larceny in the third degree, petit larceny, commercial bribing in the first degree and scheme to defraud in the first degree, upon jury verdicts, and convicting him of attempted grand larceny in the second degree (three counts), upon his pleas of guilty, and imposing sentences.

Judgments affirmed, and matter remitted to the County Court, Nassau County, for further proceedings pursuant to CPL 460.50 (5).

On appeal, defendant contends that the Attorney-General was not properly authorized to conduct Grand Jury proceedings in accordance with Executive Law § 63 (3), and that the additional Grand Jury which returned the indictments against him was not impaneled in accordance with the rules of this court (*see,* 22 NYCRR 693.23). We find that defendant's arguments in support of these contentions are insufficient to require dismissal of the six indictments upon which he was convicted.

Executive Law § 63 (3) provides, *inter alia,* that the Attorney-General shall investigate and prosecute "the alleged commission of any indictable offense or offenses in violation of the law * * * in relation to any matters connected with [the Insurance] department" upon "request" of the Superintendent of Insurance. Initially, we note that this provision "should not be construed strictly, but, rather, should be read in 'a sense to

accomplish the purpose intended' " (*Matter of Mann Judd Landau v Hynes,* 49 NY2d 128, 135). The "request" in issue appears on the letterhead of Morton Greenspan, Deputy Superintendent and General Counsel to the Insurance Department. The printed name and title "ALBERT B. LEWIS, Superintendent of Insurance" appears at the closing of the letter, followed by the signature of Morton Greenspan for the superintendent.

In the absence of any mandated form in the Executive Law for such requests, we find sufficient authorization in the Insurance Law for the form used. Insurance Law § 302 (formerly § 20) provides that any order of the superintendent which must be in writing may be "signed by the superintendent or by his authority". The request at issue is presumptively by the superintendent's authority, as a "presumption of regularity [is] applicable to all official acts of individuals functioning under an oath of office" (*Virag v Hynes,* 54 NY2d 437, 443).

Turning to defendant's second contention, we find that the order of the County Court Judge which authorized the impaneling of an Attorney-General's Grand Jury was not in contravention of any statute (*see,* CPL 190.05). Although not in strict compliance with Appellate Division, Second Department rule 693.23 (b) which permits "[a]dditional grand juries [to] be drawn and impaneled upon the order of the administrative judge having jurisdiction over the courts in [each] county" (22 NYCRR 693.23 [b]), the order in controversy was in substantial compliance with said rule. Here the Administrative Judge of Nassau County, by written directive in the form of an "Interdepartmental Memo", delegated the authority to impanel additional Grand Juries, not to exceed six in number, to the Administrative Judge of the County Court on the same date that the court rule became effective. The directive did not take the form of an "order", a technical defect. Defendant does not claim any prejudice from the administrative procedure employed. The purpose of CPL 190.10, which permits the Appellate Division of each judicial department to adopt rules governing the number and terms of which Grand Juries shall be drawn, was to effect "a more flexible administrative approach" (*Matter of Seidenberg v County Ct.,* 34 NY2d 499, 507). A requirement of strict compliance would defeat that purpose and elevate form over substance. We note that there was no danger of prejudice from a "vest pocket" Grand Jury here, as the "extension" of an existing Grand Jury was not in issue

(*see, Matter of Pesner v County Ct.,* 42 AD2d 275, 280, *affd sub nom. Matter of Seidenberg v County Ct.,* 34 NY2d 499, *supra*).

Defendant also contends that every theory or definition of larceny outlined in Penal Law § 155.05 which was charged to the jury must be sustained by the evidence in order to support his conviction for grand larceny in the second degree. He contends that one of the four theories so charged was not established by the evidence. He urges that a criminal conviction must be reversed where the jury may have determined guilt based upon a theory not supported by the evidence. We do not reach this issue of law because we find that each of the four theories of larceny upon which the jury was instructed was proved beyond a reasonable doubt. Specifically, defendant challenges the sufficiency of the evidence concerning second degree grand larceny by bad check. Penal Law §§ 155.05 and 155.35, insofar as they are applicable to defendant's claim, provide that a person is guilty of grand larceny in the second degree when he steals property with a value in excess of $1,500 by committing the crime of issuing a bad check (*see,* Penal Law §§ 155.35, 155.05 [2] [c]). The crime of issuing a bad check (*see,* Penal Law § 190.05 [1]) is defined in relevant part as follows:

"A person is guilty of issuing a bad check when:

"1. (a) As a drawer or representative drawer, he utters a check *knowing that he or his principal,* as the case may be, *does not then have sufficient funds with the drawee to cover it,* and (b) he intends or believes at the time of utterance that payment will be refused by the drawee upon presentation, and (c) payment is refused by the drawee upon presentation" (emphasis supplied). Defendant contends that the People failed to prove that he uttered the checks at issue knowing that he did not then have sufficient funds with the drawee. The People offered no direct evidence concerning defendant's bank balances at the time of utterance. However, we find that the circumstantial evidence, viewed in a light most favorable to the People, established, beyond a reasonable doubt, defendant's knowledge of insufficient funds at the time of utterance.

A representative of the New York State Automobile Insurance Plan testified that in January 1981 the plan's certified check requirement was reimposed upon defendant's multiple brokerage corporations due to the number of checks returned unpaid by the drawee banks. Notwithstanding that defendant had been placed upon the certified check requirement several months before, and that the requirement had been lifted based upon defendant's assurances that no additional checks

drawn after October 1, 1980 would be returned for insufficient funds, defendant's various corporate checks continued to be dishonored. The People offered evidence of approximately 1,000 dishonored checks dated October 7, 1980 through May 25, 1981, returned to the plan by insurance carriers. The checks were drawn on an almost daily basis throughout the period, and, accordingly, the inference that utterance of new checks was occurring simultaneously with dishonor of older checks is compelling and inescapable. Based upon this evidence alone, it would be irrational to conclude that defendant was unaware of insufficient balances.

In addition, representatives of the three insurance carriers named in the indictment as victims of defendant's larceny testified to amounts unrecovered by reason of defendant's dishonored checks. Nancy Ekenstierna, a collection clerk with the Allstate Insurance Company, testified that defendant's checks in the amount of $5,000 were returned unpaid for "insufficient funds" or "account closed". Hazel Williams, a supervisor at the Aetna Casualty & Surety Company, testified to checks totaling $16,581.30 returned unpaid after deposit. Karen Burch of the Boston Old Colony Insurance Company testified that checks totaling between $27,000 and $28,000 were returned unpaid. Photocopies of the dishonored checks were introduced into evidence.

In addition, defendant's employees testified that he was kept informed of daily bank balances, that checks were issued upon insufficient funds, and that defendant's authorization was required to issue checks.

We find the totality of the circumstantial evidence sufficient to establish defendant's guilt of grand larceny by bad check beyond a reasonable doubt.

We have considered defendant's remaining contentions and find them either without merit or unpreserved for our review. Bracken, J. P., O'Connor, Rubin and Lawrence, JJ., concur.