OPINION OF THE COURT
Raymond Harrington, J.
This defendant was convicted in this court, on March 27, 1984, upon jury verdicts, of grand larceny in the second degree, three counts, grand larceny in the third degree, petit larceny, commercial bribing in the first degree and scheme to defraud in the first degree. He thereafter was convicted upon his plea of guilty to three additional counts of attempted grand larceny in the second degree, and sentence was imposed by this court on May 16, 1984, for all of the convictions. The judgments of convictions were affirmed (112 AD2d 383). Leave to appeal to the Court of Appeals was denied (65 NY2d 928). The defendant, having been released on bail pending appeal, was then directed by the clerk of this court to appear in this *821 court for execution of the sentences on August 5, 1985. He did not appear.
Thereafter, the defendant was arrested by the Canadian police in Toronto on April 21, 1987, and through this prosecutor’s office, extradition proceedings were initiated by the United States Government in Canada. On December 3, 1987, the Canadian Minister of Justice ordered that the defendant "convicted of the crimes of five counts of grand larceny in the second degree, one count of grand larceny in the third degree, one count of Scheme to Defraud in the first degree and one count of attempted grand larceny in the second degree” be delivered by the Keeper of the Toronto Jail to the custody of a United States Marshal and a New York State officer to be conveyed to the State of New York.
On December 15, 1987, the defendant Liebowitz appeared before this court and was ordered to commence serving the sentence imposed on May 16, 1984. On January 26, 1988, the Grand Jury handed up this indictment, charging the defendant with failure to appear before this court on August 5, 1985, or within 30 days thereafter. More specifically, the indictment alleges that the crime of bail jumping in the second degree occurred on or about September 4, 1985.
The gravamen of the defendant’s present complaint is that he cannot be prosecuted and this court is without jurisdiction over him for this offense because the "doctrine of speciality or specialty” precludes prosecution for such a crime committed prior to his extradition, not included in the extradition order and not an extraditable offense under the current Canadian-American Extradition Treaty (27 UST 983). More particularly, the defendant contends that dismissal of this indictment is required pursuant to CPL 210.20 (1) (h) in that the application of the "doctrine of speciality” is a jurisdictional or legal impediment to conviction of the defendant for the offense charged.
The doctrine or rule of speciality is a rule of international extradition law which prohibits the requesting State from prosecuting a returned offender for any offense, alleged to have been committed prior to his return, other than the offense for which extradition was granted. In the instant matter, the rule of speciality has been incorporated into the 1976 Treaty of Extradition between Canada and the United States which is currently in force (27 UST 983). Article 12 of the Treaty provides:
*822 "(1) A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting State for an offense other than that for which extradition has been granted nor be extradited by that State to a third State unless:
"(i) He has left the territory of the requesting State after his extradition and has voluntarily returned to it;
"(ii) He has not left the territory of the requesting State within thirty days after being free to do so; or
"(iii) The requested State has consented to his detention, trial, punishment for an offense other than that for which extradition was granted or to his extradition to a third State, provided such other offense is covered by Article 2.
"(2) The foregoing shall not apply to offenses committed after the extradition.”
Of course, a treaty to which the Government of the United States is a party is the supreme law of the land and "the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.” (US Const art VI.) The Supreme Court has held that courts are bound to take judicial notice of, and to enforce in any appropriate proceeding, the rights of persons growing out of treaties of the United States (United States v Rauscher, 119 US 407, 417-419 [1886]).
Even in the absence of a treaty, it is a court’s obligation to enforce recognized principles of international law where questions of right depending on such principles are presented for the court’s determination (The Paquete Habana, 175 US 677 [1900]; see also, Banco Nacional de Cuba v Sabbatino, 376 US 398 [1964]; see generally, 2 O’Connell, International Law, at 805-806 [1965]). The rule of speciality is such a recognized principle of international law which our courts have devised and applied in order to implement treaties entered into by the Federal Government. Furthermore, the Supreme Court in Rauscher (supra) has laid to rest any concept that a violation of the rule of speciality is not judicially cognizable because it impacts on the foreign relations of the United States (Fiocconi v Attorney Gen. of U. S., 462 F2d 475, 479 [2d Cir 1972]).
While this court has found no New York State cases construing and applying the doctrine of speciality, the court has no doubt of its obligation to apply this rule of law and its corresponding treaty codification to this case.
There is no factual dispute that Stuart Liebowitz was extra *823 dited from Canada pursuant to the above-mentioned treaty. The first issue before the court is whether Stuart Liebowitz is being detained and about to be tried in the United States for an offense (bail jumping in the second degree [Penal Law § 215.56]) other than that for which extradition was granted (27 UST 983, art 12, ¶ 1). At first blush, it might appear that extradition was not granted for this offense and therefore the rule bars this prosecution. However, the Federal cases construing this rule have emphasized that the prohibited prosecution must be for a separate and totally unrelated offense (United States v Paroutian, 299 F2d 486, 490-491 [2d Cir 1962]).
Since the rule of speciality is grounded on concepts of international comity and the wrong, if any, is to the sovereignty of the surrendering country, courts look to whether the surrendering State would regard the challenged prosecution as a breach of the treaty and/or the rule of speciality in determining whether such State would consider the offense actually tried as "separate” (United States v Paroutian, supra; Fiocconi v Attorney Gen. of U. S., supra, at 481).
In the Paroutian case (supra) the court determined that the test for ascertaining whether the extraditing country considered the offense to be "separate” is not the technical requirements of the receiving country’s law. In this case, the fact that bail jumping is not listed in the Canadian extradition order would therefore not be dispositive of defendant’s position, merely because under local New York State law it is a separate offense from those listed in the extradition order. The court is plainly recognizing that in many instances the order of the extraditing nation and the courts, or executive authority of that country, do not possess precise knowledge of our statutes (United States v Lehder-Rivas, 668 F Supp 1523 [MD Fla 1987]; United States v Cabrera Sarmiento, 659 F Supp 169 [SD NY 1987]).
This court must determine whether the Canadian authorities would consider the present offense as separate from those for which it granted extradition. In Paroutian (supra) the defendant extradited on a Southern District of New York Federal indictment was tried instead on another narcotics charge in the Eastern District of New York which included new counts not covered by the Southern District indictment. The court found that the Lebanese (the extraditing country), having been fully apprised of the facts underlying the Eastern District indictment, would not consider that the defendant *824 was tried for anything else but the crime for which he was extradited, namely, trafficking in drugs in its broadest sense.
In the Fiocconi case (supra) the defendants were extradited for conspiracy to import heroin into the United States in the Massachusetts Federal District Court. The Second Circuit held that, in the absence of any affirmative protest from Italy (the extraditing State), that government would not regard the prosecution of the defendants in the New York Federal court for subsequent and different offenses of the same character as the crime for which they were extradited (i.e., selling heroin in New York a year after the termination of the Massachusetts conspiracy) to be a breach of faith by the United States (Fiocconi v Attorney Gen. of U. S., at 481).
The Lehder-Rivas and the Cabrera Sarmiento cases (supra) are to the same effect, holding that the failure to list one charge in the extradition request did not preclude subsequent prosecution of that count of an indictment, and that subsequent prosecution in another Federal District Court for acts which were the same as those for which a defendant was extradited did not violate the rule of speciality. In McGann v U. S. Bd. of Parole (356 F Supp 1060 [MD Pa 1973]), the court held that a habeas corpus petitioner had been properly extradited from Jamaica for bank robbery (an extraditable offense for which the petitioner had been convicted, sentenced and then paroled), where the Jamaican court had been fully apprised of those circumstances and of the subsequent parole violation for which the petitioner was presently wanted by the United States. Also, in In re Edmondson (352 F Supp 22 [D Minn 1972]), the court granted extradition to Canada on the underlying substantive offense where the defendant had escaped from a Canadian prison. Could it really be said in that case, while escape was not an extraditable offense under the then-existing Canadian-American Treaty and not the basis for the extradition, that United States sovereignty would be affronted by a subsequent Canadian prosecution for escape?
The prosecution in this case has established that the Canadian authorities were clearly aware of defendant Liebowitz’ status as a fugitive and bail jumper. People’s exhibit "C”, the bench warrant issued for failure to appear in this court, was submitted to the Canadian authorities. Furthermore, the connection between the crimes enumerated in the Canadian extradition order and the defendant’s failure to appear and commence service of this court’s sentence on those crimes is *825 sufficient, in this court’s judgment, to take this indictment out of the "separate offense” category under the Federal cases.
Accordingly, this court holds, first, that this prosecution does not violate article 12 of the Canadian-American Treaty as it is not a prosecution "for an offense other than that for which extradition has been granted” (27 UST 983, art 12, ¶ 1); second, that it does not violate the rule of speciality as interpreted by American courts; and, finally, that, in the absence of any objection from the Canadian authorities, there is no reason to believe that this prosecution would be viewed by Canada as a breach of our international obligations to that nation.
For all of these reasons, the motion to dismiss the indictment on these grounds is denied.