■ In the Matter of STUART E. LIEBOWITZ, Petitioner, v RAYMOND HARRINGTON et al., Respondents.—Proceeding pursuant to CPLR article 78 to prohibit the County Court, Nassau County, Raymond Harrington, a Judge of that court, and the Attorney-General of the State of New York from prosecuting indictment No. 67378 charging the petitioner with the crime of bail jumping in the second degree, which was marked off the Trial Calendar on September 28, 1988, upon the Attorney-General's motion, and placed on a Reserve Calendar until such time as the case may be tried within the exceptions provided in the 1971 Treaty on Extradition between the United States of America and Canada (27 UST 983, art 12, § [1] [i], [ii]).

Adjudged that the petition is granted, on the law, without costs or disbursements, indictment No. 67378 is dismissed, and the matter is remitted to the County Court, Nassau County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

On March 27, 1984, following a jury trial, the petitioner was

convicted of grand larceny in the second degree (three counts), grand larceny in the third degree, petit larceny, commercial bribing in the first degree and scheme to defraud in the first degree. He was also convicted, upon his plea of guilty, of attempted grand larceny in the second degree (three counts). The sentences imposed totaled an aggregate indeterminate term of from 7 to 21 years' imprisonment. The petitioner's application to this court for a stay of the execution of the judgments was granted on condition that he post bail of $100,000. On July 22, 1985, this court affirmed those judgments *(People v Liebowitz,* 112 AD2d 383). The petitioner failed to appear for the execution of the sentence on August 5, 1985, as directed by the Clerk of the County Court, Nassau County.

On or about April 21, 1987, Canadian authorities apprehended the petitioner in Toronto. In December 1987, following extradition proceedings initiated by our government, the petitioner returned to New York to serve sentence for the crimes of which he was convicted.

Subsequently, in January 1988 the petitioner was indicted for bail jumping in the second degree for his failure to appear before the County Court, Nassau County, on August 5, 1985, or within 30 days thereafter *(see,* Penal Law § 215.56). The petitioner moved to dismiss the indictment upon the ground that the 1971 Treaty on Extradition between the United States and Canada prohibits prosecution for the crime of bail jumping because the extradition proceedings did not include that charge and it is not an extraditable offense under the treaty.

Article 12 of the treaty with Canada under which the petitioner was surrendered to our State government reads as follows:

"A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting State for an offense other than that for which extradition has been granted nor be extradited by that State to a third State unless:

"(i) He has left the territory of the requesting State after his extradition and has voluntarily returned to it;

"(ii) He has not left the territory of the requesting State within thirty days after being free to do so".

On July 13, 1988, the County Court, Nassau County (Harrington, J.), held that a trial for bail jumping was proper because "[t]he Canadian authorities were clearly aware of

* * * Liebowitz' status as a fugitive and bail jumper" and, furthermore, "the connection between the crimes enumerated in the Canadian extradition order and the defendant's failure to appear and commence service of this court's sentence on those crimes is sufficient * * * to take this indictment out of the 'separate offense' category under the Federal cases" *(People v Liebowitz,* 140 Misc 2d 820, 824-825). Subsequently, the United States Department of Justice advised the New York State Attorney-General that the bail jumping charge could not be prosecuted since it was not contemplated in the extradition request, it was not covered by the treaty, and the Government of Canada objected to the prosecution. Consequently, the People made an application to remove the matter from the Trial Calendar to the Reserve Calendar until such time as the petitioner was available for trial within the terms of the treaty, i.e., until 30 days had elapsed after the petitioner was free to leave the United States. The court granted the People's motion.

The petitioner commenced this proceeding pursuant to CPLR article 78 to enjoin any prosecution of the bail jumping charge.

Initially, we note that, contrary to the respondents' contention, prohibition lies here as there is a clear legal right, an act in excess of the court's jurisdiction and no other remedy available *(see, Matter of Molea v Marasco,* 64 NY2d 718; *Matter of Dondi v Jones,* 40 NY2d 8, 13; *cf., Matter of Lipari v Owens,* 70 NY2d 731).

As a matter of international comity, "[t]he doctrine of 'specialty' prohibits the requesting nation from prosecuting the extradited individual for any offense other than that for which the surrendering state agreed to extradite" *(Quinn v Robinson,* 783 F2d 776, 783 [9th Cir], *cert denied* 479 US 882). Of course, the extradited party may be tried for a crime other than that for which he was surrendered if the asylum country consents *(United States v Najohn,* 785 F2d 1420, 1422). However, in this case, Canada strongly objects to a trial of the petitioner for the crime of bail jumping.

Therefore, prosecution of the instant indictment is violative of the Treaty on Extradition between the United States of America and Canada. Significantly, under the circumstances here, the letter from the United States Justice Department counsels that "[c]onsistent with the Treaty, and with the cases which have construed the Rule of Speciality *[sic],* the charges *[sic]* must be dismissed" (citing *United States v Rauscher,* 119

US 407). We are constrained to follow that view. Brown, J. P., Lawrence, Kooper and Spatt, JJ., concur.