[644 NYS2d 934]

In the Matter of KERRIE L. HAGGERTY, on Behalf of Herself and Others, et al., Petitioners, v LARRY M. HIMELEIN, as Cattaraugus County Court Judge, et al., Respondents.

Fourth Department, May 31, 1996

### APPEARANCES OF COUNSEL

*Joel L. Daniels,* Buffalo, for Kerrie L. Haggerty, petitioner.

*Lipsitz, Green, Fahringer,* Buffalo *(Herbert L. Greenman* of counsel), for Shawn Appleby and another, petitioners.

*Mark Lubet,* Orlando, Florida, for Cory Shea, petitioner.

*Thomas Eoannou,* Buffalo, for Brian E. Mooney, petitioner.

*Thomas C. Brady,* Salamanca, for John L. Reynolds, petitioner.

*Andrew C. Lo Tempio,* Buffalo, for Sandra Sue Haggerty, petitioner.

*Lipsitz, Green, Fahringer,* Buffalo *(Cheryl Meyers* of counsel), for Troy Fusco, petitioner.

*Rick Goodell,* Buffalo *(Robert Isaac* of counsel; *Dennis C. Vacco, Attorney-General),* for Larry M. Himelein, respondent.

*Michael Nevins, District Attorney* of Cattaraugus County, Little Valley *(Dennis Tobolski* of counsel), respondent *pro se.*

### OPINION OF THE COURT

DENMAN, P. J.

In this original CPLR article 78 proceeding, petitioners seek a judgment prohibiting respondents from proceeding on Catt-

araugus County indictment No. 95-168, and further seek dismissal of that indictment. Petitioners are charged in that indictment with various counts of murder, manslaughter, and assault in connection with the death of Kevin King on October 23, 1994 in Olean. Respondents are Honorable Larry M. Himelein, Cattaraugus County Court Judge; Honorable Michael P. Nevins, Cattaraugus County District Attorney; Honorable Dennis C. Vacco, New York State Attorney-General; and Rick Goodell, New York State Assistant Attorney-General. The primary issue in this proceeding is whether the Attorney-General and his assistants (the Attorneys-General) may intervene in a criminal prosecution at the invitation of the Cattaraugus County Legislature and District Attorney, but without the authorization of the Governor. Additionally, we must decide whether this Court has subject matter jurisdiction and whether prohibition is an appropriate remedy.

### FACTUAL BACKGROUND

Twenty-eight-year-old Kevin King died in the early morning hours of October 23, 1994. According to eyewitnesses, King was attacked by a mob outside a pizzeria in Olean. As King lay unconscious on the ground, his assailants, who allegedly included petitioners, continued to beat and kick him. An initial autopsy was performed by Dr. Justin Uku, who apparently was not told that the victim had been beaten and kicked, but instead was told that he had suffocated under a "pile-on" of individuals. Dr. Uku concluded that King had died accidentally of traumatic asphyxiation and apparently so testified before a Cattaraugus County Grand Jury, which considered the case in February 1995. In addition, the Grand Jury heard the testimony of at least seven eyewitnesses, including two who knew the names of all of the assailants, but who unaccountably were not asked to identify them. Consequently, the Grand Jury failed to indict anyone in King's death.

Thereafter, King's family alleged that the investigation had been mishandled by the Cattaraugus County Sheriff's Department and the District Attorney, and publicly asked the Governor, the Attorney-General, and the State Police to intervene. On March 8, 1995, the Cattaraugus County Legislature requested that the Attorney-General "provide assistance into the inquiry concerning the death of Kevin King." That request apparently was seconded by the District Attorney. On March 24, 1995, the Attorney-General agreed to intervene. Thereafter, he and four of his assistants, none of whom resides

in Cattaraugus County, executed oaths of office as Assistant District Attorneys. Those oaths of office were subscribed and sworn to before the District Attorney, who caused them to be filed in the office of the Cattaraugus County Clerk. It is undisputed that there is no Executive Order authorizing the appearance of the Attorneys-General in this matter.

Petitioners allege, upon information and belief, that the Attorneys-General have controlled the investigation to the exclusion of the District Attorney and his assistants. The Attorneys-General and District Attorney deny that allegation and assert that all actions of the Attorneys-General have been taken under the "aegis, direction and control of the District Attorney." The record is ambiguous on that point. It establishes that, after State Police began to question numerous witnesses, the District Attorney applied for an exhumation order, which was granted on March 28, 1995. King's body was disinterred and a second autopsy performed on April 17, 1995 by Dr. Michael Baden, Director of the Forensic Sciences Unit of the State Police, in the presence of the District Attorney, two Assistant Attorneys-General, and numerous State Police officers. Dr. Baden concluded that the cause of death was "[m]ultiple blunt force injuries to head and chest with fractures of ribs and fatal cardiac arrhythmia. Homicide."

Subsequently, Assistant Attorney-General Battle, purportedly acting as "Assistant District Attorney for Cattaraugus County", applied to County Court for leave to resubmit the case to a second Grand Jury pursuant to CPL 190.75 (3). On October 2, 1995, Judge Himelein granted the application in a decision and order issued to the District Attorney, Attorney-General Vacco and Assistant Attorney-General Battle, the latter two in their purported capacities as "Assistant District Attorney[s] for Cattaraugus County." Thereafter, Assistant Attorney-General McGrier, purportedly "[a]cting as Assistant District Attorney," issued various Grand Jury subpoenas in the names of the District Attorney and the Attorney-General.

The case was presented to a second Grand Jury by Assistant Attorney-General Goodell. The District Attorney was not present before the second Grand Jury. On the other hand, the District Attorney met with "Assistant District Attorney" Goodell to discuss the Grand Jury evidence, legal instructions and possible charges; scheduled the Grand Jury sessions; and had his subordinates prepare the indictment. That 42-count indictment, returned by the second Grand Jury on November 30, 1995, variously charges petitioners with murder, manslaugh-

ter, criminally negligent homicide, and assault. The District Attorney personally delivered the indictment to Acting County Court Judge Nenno and personally conducted most of the arraignments of petitioners. Subsequently, CPL 710.30 notices were served in the name of "Rick Goodell, Acting Assistant District Attorney, County of Cattaraugus." Petitioners assert that all discovery has been obtained from Goodell, that all of their discussions about the case have been with Goodell, and that all correspondence from the People has been drafted on the Attorney-General's letterhead.

In late January and early February 1996, several petitioners moved to dismiss the indictment pursuant to CPL 210.20 (1) (c) on the ground that the Grand Jury proceeding was defective within the meaning of CPL 210.35 (5). The movants alleged that the Attorneys-General had no power to prosecute the action and that Assistant Attorney-General Goodell was not a person authorized to be present in the Grand Jury room pursuant to CPL 190.25 (3).

Simultaneously, petitioners commenced this CPLR article 78 proceeding seeking a writ of prohibition. The petition alleges that County Court Judge Himelein has acted in excess of his jurisdiction by granting the Attorneys-General permission to resubmit the case to a second Grand Jury, and by presiding over this prosecution by the Attorneys-General, each of whom lacks constitutional and statutory power to prosecute the case; that the District Attorney has acted in excess of his jurisdiction by improperly delegating his authority to prosecute the case to the Attorneys-General; and that the Attorneys-General have acted in excess of their jurisdiction by intervening in the case without an Executive Order and by acting as Assistant District Attorneys in an attempt to circumvent the Executive Law. Petitioners seek an order prohibiting Judge Himelein from "proceeding not only with the trial of this indictment, but from conducting any further proceedings involving this case"; prohibiting the District Attorney from "proceeding with not only the trial of this indictment but any matters relating thereto"; and prohibiting the Attorneys-General from "prosecuting, investigating, or proceeding in any manner with this indictment."

The Attorneys-General submitted an answer, as did the District Attorney. Judge Himelein has not submitted an answer. The Attorneys-General seek dismissal on the grounds that this Court lacks jurisdiction, and that prohibition does not lie in these circumstances. The District Attorney seeks dis-

missal on the ground that petitioners have failed to assert a substantial right or interest, or a clear right to relief. The District Attorney further asserts that he is properly prosecuting the criminal action, properly appointed the Attorneys-General as Assistant District Attorneys, and is properly supervising them.

## THIS COURT HAS SUBJECT MATTER JURISDICTION

■ A proceeding against a body or officer generally must be commenced in Supreme Court (see, CPLR 7804 [b]; see also, CPLR 506 [b]). Where prohibition is sought against a Justice of the Supreme Court or a Judge of the County Court, however, it must be commenced in the Appellate Division in the judicial department where the underlying action is triable (see, CPLR 506 [b] [1]). That provision is directed to the Court's subject matter jurisdiction, not merely venue, and therefore is non-waivable (see, Matter of Nolan v Lungen, 61 NY2d 788, 790; Ferrick v State of New York, 198 AD2d 822, 823).

Here, petitioners named County Court Judge Himelein as a respondent. Thus, notwithstanding the naming of other officers as respondents, the proceeding must be commenced in the Appellate Division (see, CPLR 506 [b] [1]; Matter of Pollak v Mogavero, 114 AD2d 640, 641). Nevertheless, the Attorneys-General assert that a petitioner may not confer subject matter jurisdiction upon the Appellate Division merely by naming a County Court Judge as a respondent and that, in such cases, the Court must scrutinize the allegations of the petition to determine whether the Judge is properly named as a respondent, i.e., whether the petition in reality seeks relief against that Judge or merely against another body or officer (see, Matter of New York State Rifle & Pistol Assn. v City of Mount Vernon, 148 AD2d 616; Matter of Williams v Shanley, 138 AD2d 885, 886).

We conclude that Judge Himelein is a proper respondent and that the proceeding therefore is within the original jurisdiction of this Court. Judge Himelein granted the Attorneys-General leave to resubmit the case to a second Grand Jury, thereby endorsing their purported appointment as Assistant District Attorneys. Further, the proceeding actually seeks relief against Judge Himelein, i.e., an order prohibiting him from proceeding with the trial of the indictment. Moreover, numerous decisions hold or imply that a presiding Judge is properly named as a co-respondent in a prohibition proceeding challenging the authority of a special prosecutor or the

Attorney-General (*see, e.g., Matter of B. T. Prods. v Barr*, 44 NY2d 226, 231, 234; *Matter of Dondi v Jones*, 40 NY2d 8, *rearg denied* 39 NY2d 1058; *Matter of Blancero v Brown*, 216 AD2d 384, *lv denied* 86 NY2d 705; *Matter of Liebowitz v Harrington*, 152 AD2d 737; *Matter of Collesano v Marshall*, 151 AD2d 1045; *Matter of Board of Supervisors v Aulisi*, 62 AD2d 644, *affd* 46 NY2d 731), or challenging the prosecutor's authority to proceed upon an allegedly illegally obtained indictment (*see, Matter of Forte v Supreme Ct.*, 48 NY2d 179, 183-184; *Matter of Vega v Bell*, 47 NY2d 543, 546-547).

### THE ATTORNEY-GENERAL LACKS AUTHORITY
### TO INTERVENE IN THIS PROSECUTION

■ Petitioners contend that, absent an Executive Order issued by the Governor, the Attorneys-General have no authority to prosecute this case, and that appointment of the Attorneys-General as Cattaraugus County Assistant District Attorneys is a subterfuge that violates New York's constitutional and statutory scheme generally vesting exclusive jurisdiction to prosecute local criminal matters in the District Attorney. The Attorney-General's power to prosecute actions is found in the Executive Law. Executive Law § 63 (2) provides in part: "The attorney-general shall * * * [w]henever required by the governor, attend in person, or by one of his deputies, any term of the supreme court or appear before the grand jury thereof for the purpose of managing and conducting in such court or before such jury criminal actions or proceedings as shall be specified in such requirement; in which case the attorney-general or his deputy so attending shall exercise all the powers and perform all the duties in respect of such actions or proceedings, which the district attorney would otherwise be authorized or required to exercise or perform; and in any of such actions or proceedings the district attorney shall only exercise such powers and perform such duties as are required of him by the attorney-general or the deputy attorney-general so attending."

Thus, Executive Law § 63 (2) precludes the Attorney-General from participating in a criminal action except at the specific direction of the Governor (*see, Della Pietra v State of New York*, 71 NY2d 792, 796-797; *Matter of Additional Jan. 1979 Grand Jury v Doe*, 50 NY2d 14, 17-18; *Matter of B. T. Prods. v Barr, supra*, at 236; *Matter of Board of Supervisors v Aulisi, supra*, at 648; *People ex rel. Osborne v Board of Supervisors*,

168 App Div 765, 767-768). That statute complements the constitutional provision creating the office of District Attorney in each county of the State (see, NY Const, art XIII, § 13) and statutory provisions defining the District Attorney's powers and duties (see, County Law § 700 et seq.; see also, County Law §§ 825, 927). In particular, County Law § 700 (1) states that "[i]t shall be the duty of every district attorney to conduct all prosecutions for crimes and offenses" (see, County Law § 927). As made clear by those provisions, "[w]ith few exceptions, the Legislature has delegated the responsibility for prosecuting persons accused of crime solely to the District Attorney, the public officer entrusted with the general prosecutorial authority for all crimes occurring in the county where elected (see, County Law §§ 700, 927; Matter of Darvin M. v Jacobs, 69 NY2d 957, 959; see also, Matter of Turecamo Contr. Co., 260 App Div 253, 257). The Attorney-General, by contrast, is given no general prosecutorial authority and, except where specifically permitted by statute (see, e.g., General Business Law §§ 358, 692; Executive Law § 70-a), has no power to prosecute criminal actions" (Della Pietra v State of New York, supra, at 796-797; see also, Matter of B. T. Prods. v Barr, supra, at 236).

While an Executive Order does not create the Attorney-General's power to prosecute criminal offenses, it is the occasion for and a condition precedent to the Attorney-General's exercise of that power (see, Matter of Board of Supervisors v Aulisi, supra, at 648; People v Goldswer, 78 Misc 2d 910, 912-913; People v Hopkins, 182 Misc 313, 316; Matter of Cranford Material Corp., 174 Misc 154, 155, 158-160, affd sub nom. Matter of Turecamo Contr. Co., 260 App Div 253). Moreover, an Executive Order defines the permissible scope of the Attorney-General's actions (People v Leahy, 72 NY2d 510, 515; Matter of Additional Jan. 1979 Grand Jury v Doe, supra, at 17-18; Matter of Dondi v Jones, supra, at 15-20; Matter of Cranford Material Corp., supra, at 155). "Apparently the legislative intent is to let the Executive and not the Attorney-General determine when the Attorney-General shall prosecute instead of a district attorney" (Matter of Cranford Material Corp., supra, at 160). Thus, the Attorney-General's authority extends only to those matters set forth in the Governor's order (see, Matter of Additional Jan. 1979 Grand Jury v Doe, supra, at 18, citing Matter of Dondi v Jones, supra, at 19, and Matter of Turecamo Contr. Co., 260 App Div 253, 259, supra). In defining the permissible scope of the Attorney-General's authority, the Executive Order "curtails by its terms the functions of the district at-

torney and takes away from him *pro tanto* duties and powers granted and imposed by law" (*People ex rel. Osborne v Board of Supervisors, supra,* at 767; *see, Matter of Dondi v Jones, supra,* at 19.

Here, the Governor did not issue an Executive Order allowing the Attorneys-General to appear in the action. Thus, the Attorneys-General lack authority to undertake the prosecution as a function of their own office. Respondents do not argue otherwise.

Instead, respondents contend that the Attorneys-General are properly participating in the action pursuant to County Law § 702, which provides:

"The board of supervisors shall have power to authorize the district attorney to appoint one or more assistant district attorneys. Every such appointment shall be in a writing filed and recorded in the office of the county clerk. The person appointed shall take the prescribed oath of office and furnish any required official undertaking * * *

"The assistant shall perform such duties pertaining to the office as may be directed by the district attorney" (County Law § 702 [1], [2]; *see also,* County Law § 825).

Petitioners contend that the appointments in this case are a sham and an attempt to skirt the Executive Law. They argue that the Attorneys-General cannot qualify as Assistant District Attorneys because they are not residents of the County (*see,* Public Officers Law § 3 [1]; *see also, Matter of Brindisi v Donalty,* 171 AD2d 1039, *lv denied* 78 NY2d 855; 1965 Atty Gen [Inf Opns] 84). Petitioners further contend that the District Attorney illegally delegated his prosecutorial authority by allowing the Attorneys-General to take over the prosecution (*see, Matter of Schumer v Holtzman,* 60 NY2d 46; *People v Di Falco,* 44 NY2d 482, 487).

Respondents dispute those contentions. They argue that the District Attorney did not surrender his authority, but is closely supervising the Attorneys-General and remains in ultimate control of the prosecution. Respondents argue that this case thus represents a proper delegation of the District Attorney's authority to specially appointed assistants. Additionally, respondents argue that the residency requirement is riddled with exceptions (although respondents point to no exception for Assistant District Attorneys in Cattaraugus County), and that violation of the residency requirement is not a ground for reversal on appeal from a judgment of conviction, let alone for issuance of the extraordinary remedy of prohibition (*see, People*

*v Dunbar*, 53 NY2d 868, 870-871; *Matter of Brindisi v Donalty, supra*, at 1040).

We do not address the residency issue. We hold that the intrusion of the Attorneys-General into this case, even at the request of the District Attorney and under his supposed supervision, is unlawful because it conflicts with the constitutional and legislative scheme allocating the respective powers of the Attorneys-General and District Attorneys in criminal matters. We take note of those cases cited by respondents that interpret County Law §§ 700 and 702 to allow a District Attorney to deputize public officials and private individuals, whether or not they are attorneys, to prosecute minor crimes (*see, e.g., People v Soddano*, 86 NY2d 727, 728; *People v Van Sickle*, 13 NY2d 61, 62-63; *People v Czajka*, 11 NY2d 253, 254; *People v DeLeyden*, 10 NY2d 293, 294). Nonetheless, to allow a District Attorney to appoint the Attorneys-General as Assistant District Attorneys would nullify the Executive Law's specific limitations upon the powers of the Attorney-General. Under the circumstances, the underlying criminal prosecution "rightly belongs within the jurisdiction of the District Attorney", not the Attorneys-General (*Matter of Dondi v Jones, supra*, at 10).

Respondents argue that an Executive Order is necessary only when the Attorneys-General usurp the role of the District Attorney entirely, and that the District Attorney has not surrendered his authority over this case. On this record, we are unable to say that the District Attorney remains in control of the prosecution and is supervising the Attorneys-General. In any event, that argument merely underscores respondents' disregard for the legislative scheme. Pursuant to Executive Law § 63 (2), when Attorneys-General appear in a criminal action at the direction of the Governor, the Attorneys-General exercise all the powers and functions that the District Attorney otherwise would exercise, and the District Attorney exercises only such powers and functions as the Attorneys-General direct. In that situation, the Attorney-General's office "supersedes the district attorney, save so far as [it] directs the conduct of the district attorney" (*People ex rel. Osborne v Board of Supervisors, supra*, at 767; *see, Matter of Dondi v Jones, supra*, at 19). Under the statute and case law, the Attorney-General and his assistants may deputize the District Attorney and his staff, not the reverse (*cf., People v Malek*, 99 Misc 2d 439, 448-449).

### PROHIBITION IS A PROPER REMEDY

A CPLR article 78 proceeding in the nature of prohibition is available to address "whether [a] body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction" (CPLR 7803 [2]). A prohibition proceeding may be maintained to restrain a body or officer acting in a judicial or quasi-judicial capacity as opposed to a legislative, executive, or administrative capacity (*Matter of Rush v Mordue*, 68 NY2d 348, 353, n 3; *Matter of Dondi v Jones, supra*, at 13; *see generally, Matter of McGinley v Hynes*, 51 NY2d 116, 123-124, *rearg denied* 51 NY2d 1009, *cert denied* 450 US 918). Where a prosecutor is representing the public in prosecuting accused criminals, as opposed to investigating whether a crime has been committed, the prosecutor is performing a quasi-judicial function and is thus subject to prohibition (*Matter of Schumer v Holtzman, supra*, at 51; *Matter of McGinley v Hynes, supra*, at 123-124; *Matter of Dondi v Jones, supra*, at 13). A prohibition proceeding may be brought only to restrain an inferior tribunal or officer from acting in a matter over which it has no power over the subject matter, or from exceeding its authorized powers in a matter over which it has jurisdiction (*see, Matter of Dondi v Jones, supra*, at 13; *Matter of State of New York v King*, 36 NY2d 59, 62). Although there is no sharp line between a court's acting in excess of the court's powers and merely acting in error (*see, Matter of McGinley v Hynes, supra*, at 124; *La Rocca v Lane*, 37 NY2d 575, 580, *cert denied* 424 US 968), the writ generally is not available to correct mere procedural or substantive errors (*Matter of Holtzman v Goldman*, 71 NY2d 564, 569; *Matter of Rush v Mordue, supra*, at 353). Moreover, the writ generally does not lie where the harm can be adequately corrected on appeal or by recourse to ordinary proceedings (*see, Matter of Rush v Mordue, supra*, at 354). The extraordinary remedy lies where there is a clear legal right to relief (*Matter of Rush v Mordue, supra*, at 352; *Matter of Schumer v Holtzman, supra*, at 51).

On the other hand, prohibition may be obtained where it "would furnish 'a more complete and efficacious remedy * * * even though other methods of redress are technically available' " (*Matter of Rush v Mordue, supra*, at 354, quoting *Matter of Dondi v Jones, supra*, at 14). Even where the writ may be technically appropriate, it "nonetheless does not issue as of right, but only in the sound discretion of the court" (*Matter of Rush v Mordue, supra*, at 354; *see, La Rocca v Lane, supra*, at 579). In exercising that discretion, the court must weigh the foregoing factors (*see, Matter of Rush v Mordue, supra*, at 354).

We conclude that prohibition is appropriate in these circumstances. The petition alleges that the Attorneys-General lack power to seek an indictment against petitioners or to prosecute them. It alleges more than a mere error of substantive law or procedure, but rather such a lack or excess of jurisdiction "as to implicate the legality of the entire proceeding" (*Matter of Rush v Mordue, supra*, at 353; *cf., Matter of Dondi v Jones, supra*, at 15). We note that either the presence of an unauthorized person before the Grand Jury or presentment by an unauthorized prosecutor would be a ground for dismissal of the indictment (*see, People v Dunbar, supra*, at 871; *People v Di Falco, supra*, at 486-488; *People v Minet*, 296 NY 315, 322-323; *People v Beauvais*, 98 AD2d 897, 897-898; *People v Hopkins*, 182 Misc 313, 315-316, *supra*). It is questionable whether such defect in the Grand Jury proceedings could be waived and, in any event, such defect is not amenable to harmless error analysis where, as here, there is a possibility of prejudice (*see, People v Wilkins*, 68 NY2d 269, 277, n 7; *People v Di Falco, supra*, at 485, 488). Although petitioners likely would prevail on that issue on direct appeal, prohibition will furnish " 'a more complete and efficacious remedy' " (*Matter of Rush v Mordue, supra*, at 354, quoting *Matter of Dondi v Jones, supra*, at 14). A successful appeal following conviction would necessitate the cost and burden of a retrial, thus undermining "the very reason for the remedy" (*La Rocca v Lane, supra*, at 580; *see, Matter of Dondi v Jones, supra*, at 13-14). Indeed, respondents would be wise to seek, rather than obstruct, an early resolution of this issue (*cf., Matter of Dondi v Jones, supra*, at 13-15). We note that, in analogous circumstances, courts have held that prohibition is an appropriate remedy to void the improper or ultra vires appointment of a prosecutor (*see, Matter of Schumer v Holtzman, supra*, at 54; *Matter of Holtzman v Hellenbrand*, 130 AD2d 749, 750, *lv denied* 70 NY2d 607; *Matter of Wilcox v Dwyer*, 73 AD2d 1016, 1017; *Matter of Board of Supervisors v Aulisi, supra*, at 646-648), or to restrain the ultra vires acts of a prosecutorial usurper (*see, Matter of Dondi v Jones, supra*, at 14).

### CONCLUSION

In view of the clear and substantial nature of petitioners' right not to be prosecuted by the Attorneys-General, the potential harm to petitioners as a result of being subjected to consecutive prosecutions, and the waste of judicial resources that would result from deferring resolution of this issue until after conviction, the petition should be granted in part.

Concerning the precise scope of the remedy, we deny petitioners' request for dismissal of the indictment. This is not a criminal proceeding, and the indictment and petitioners' motion to dismiss it are not properly before us (*see, Matter of Dondi v Jones, supra*, at 20).

Moreover, because the District Attorney and County Court do not generally lack authority in this proceeding, but lack authority only with respect to the illegally obtained indictment, Judge Himelein and the District Attorney should be prohibited only from proceeding with the trial of this indictment. We note that such relief is less than that demanded by petitioners, and will not prevent the court from entertaining, and the District Attorney from appearing in opposition to, the pending motions to dismiss the indictment.

With respect to the Attorney-General and Assistant Attorney-General, there is no authority to prohibit them from investigating, because that is not a quasi-judicial function (*see, Matter of McGinley v Hynes, supra*, at 123-124). Therefore, the Attorneys-General should be prohibited from attending, appearing in, or otherwise conducting any further proceedings on this indictment.

Accordingly, the petition should be granted in part, in accordance with the foregoing.

PINE, FALLON, BALIO and BOEHM, JJ., concur.

Petition unanimously granted, in part, without costs, and judgment granted in accordance with the opinion by DENMAN, P. J.